1  Philip L. Pillsbury, Jr. (SBN 72261)
2  Ingrid S. Leverett (SBN 148813)
   PILLSBURY & LEVINSON, LLP
3  The Transamerica Pyramid
   600 Montgomery Street, 31st Floor
4  San Francisco, CA 94111
   Telephone:  (415) 433-8000
5  Facsimile:   (415) 433-4816
   ppillsbury@pillsburylevinson.com
6  ileverett@pillsburylevinson.com

7

8  Attorneys for Petitioner
   MATSON TERMINALS, INC.
9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

13  MATSON TERMINALS, INC.,              )  Case No.
                                         )
14              Petitioner,              )  **MATSON TERMINALS, INC.'S**
                                         )  **PETITION TO COMPEL**
15       v.                              )  **ARBITRATION; MEMORANDUM OF**
                                         )  **POINTS AND AUTHORITIES**
16  INSURANCE COMPANY OF NORTH           )
    AMERICA,                             )
17                                       )  **DATE:          TBD**
                                         )  **TIME:          TBD**
18                                       )  **COURTROOM:   TBD**
                                         )
19              Respondent.              )
                                         )
20                                       )
                                         )
21                                       )
                                         )
22                                       )
                                         )
23  _____  )

24

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

**TABLE OF CONTENTS**

**Page(s)**

I.    FACTS ................................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 4

A    The Parties Agreed to Arbitrate Disputes About the Amounts of Benefits
     Payable for Permanent Total Disability Losses. ........................................... 8

B.   Each of Matson's Indemnity Claims Presents the Same Arbitrable Issue:  What
     Amount of Benefits is Payable for this Permanent Total Disability Loss? ............... 10

     1.   Matson and INA Dispute the Value of Each Claim, and Endorsement #6
          Requires Such Disputes to Be Arbitrated. ........................................... 10

     2.   Peripheral Issues Raised By INA, Which Are Relevant Only Insofar as They
          Impact the Central Arbitrable Issue of Claim Valuation, Can and Should Be
          Resolved By the Arbitrators. .............................................................. 11

C.   Matson Has Consistently Demanded Arbitration and Has Never Waived its
     Right to Arbitrate. ............................................................................... 15

III.  CONCLUSION .................................................................................................. 17

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

**TABLE OF AUTHORITIES**

**Cases**

*Acquire II, Ltd. v. Colton Real Estate Group,*
213 Cal. App. 4th 959 (2013) ................................................................... 6

*Am. Way Cellular, Inc. v. Travelers Prop. and Cas. Co. of Am.,*
216 Cal. App. 4th 1040 (2013) ................................................................. 5

*B.S. Costello, Inc. v. Meagher,*
867 F.2d 722 (1st Cir. 1989) .................................................................. 14

*Bixler v. Next Fin'l Group, Inc.,*
858 F. Supp. 2d 1136 (D. Mon. 2012) .................................................... 15

*Campbell v. Allstate Ins. Co.,*
60 Cal.2d 303 (1963) ............................................................................. 13

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*
207 F.3d 1126 (9th Cir. 2000) .................................................................. 7

*Comedy Club, Inc. v. Improv West Associates,*
553 F.3d 1277 (9th Cir. 2009) .................................................................. 6

*Fisher v. A.G. Becker Paribas Inc.,*
791 F.2d 691 (9th Cir.1986) ................................................................... 16

*Garamendi v. Mission Ins. Co.,*
131 Cal. App. 4th 30 (2005) ..................................................................... 2

*Granite Rock Co. v. International Broth. of Teamsters*
130 S.Ct. 2847 (2010) ............................................................................ 12

*Gravillis v. Coldwell Banker Residential Brokerage Co.,*
143 Cal. App. 4th 761 (2006) ................................................................... 6

*Home Indem. Co. v. Mission Ins. Co.,*
251 Cal. App. 2d 942 (1967) .................................................................... 4

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002) ................................................................................. 13

*International Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc.,*
406 U.S. 487 (1972) ......................................................................... 13, 14

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

*LSC Holdings, Inc. v. Ins. Com'r of PA,*
   151 Pa. Cmwlth. 377 (1992) .................................................................. 14

*Mastick v. TD Ameritrade, Inc.,*
   209 Cal. App. 4th 1258 (2012) ................................................................. 5

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
   514 U.S. 52 (1995) ................................................................................. 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985) ............................................................................... 6

*Moncharsh v. Heily & Blasé,*
   3 Cal.4th 1 (1992) .................................................................................. 5

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) .................................................................................. 7

*Nat'l Metal & Steel Corp. v. Reich,*
   858 F.Supp. 62 (D. Md. 1994) ............................................................... 14

*Penn-America Ins. Co. v. Mike's Tailoring,*
   125 Cal. App. 4th 884 (2005) ................................................................. 2

*Quackenbush v. Allstate Ins. Co.,*
   121 F.3d 1372, 1380 (9th Cir. 1997) ....................................................... 6

*Republic of Nicaragua v. Standard Fruit Co.,*
   937 F.2d 469 (9th Cir. 1991) .................................................................. 6

*Sacks v. Dean Witter Reynolds Inc.,*
   627 F. Supp. 377 (C.D. Cal. 1985) ........................................................ 15

*Shell Oil Co. vs. Winterthur Swiss Ins. Co.,*
   12 Cal. App. 4th 715 (1993) .................................................................. 13

*Simula, Inc. v. Autoliv, Inc.,*
   175 F.3d 716 (9th Cir. 1999) .................................................................. 6

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,*
   489 U.S. 468 (1989) ............................................................................... 7

*Wolsey, Ltd. v. Foodmaker, Inc.,*
   144 F.3d 1205 (9th Cir. 1998) ...................................................... 7, 14, 16

*Zenger-Miller, Inc. v. Training Team, GmbH,*
   757 F. Supp. 1062 (N.D. Cal. 1991) ...................................................... 14

*Zolezzi v. Dean Witter Reynolds, Inc.,*
   789 F.2d 1447 (9th Cir. 1986) ............................................................... 14

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-iii-

1

**Statutes**

28 U.S.C. § 1332 ........................................................................................... 1

33 U.S.C. § 908(f)(2)(A) .............................................................................. 14

33 U.S.C. § 918(b) ........................................................................................ 14

33 U.S.C. § 901 .............................................................................................. 8

9 U.S.C. § 4 .................................................................................................... 7

California Code of Civil Procedure § 1280 ......................................... 4, 7, 10

California Code of Civil Procedure § 1280.5 ................................................ 7

California Code of Civil Procedure § 1281.2 ................................................ 6

California Code of Civil Procedure § 1280.5 .............................................. 10

Civil Code § 1651 .......................................................................................... 5

Federal Arbitration Act, 9 U.S.C. § 1 ........................................................... 1

Longshore and Harbor Workers' Compensation Act § 8(f) ......................... 14

**Other Authorities**

California Practice Guide: Insurance Litigation (Rutter Group 2012)
    ¶¶3:168; 6:32-33; 7:409-411.10 .......................................................... 13

Schwarzer et al., California Practice Guide:  Federal Civil Procedure Before Trial,
    ¶16:99 (The Rutter Group) ..................................................................... 7

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PETITION TO COMPEL ARBITRATION                                    Case No. ___

**TO RESPONDENT INSURANCE COMPANY OF NORTH AMERICA ("INA"):**

    **PLEASE TAKE NOTICE THAT Petitioner Matson Terminals, Inc. ("Matson"),** through its attorneys of record herein, will, on (*date*) _____ at (*time*) ___: ___ ___.m., appear before this Court, in Department No.: _____ , located at 450 Golden Gate Avenue, San Francisco, California, for a hearing on this Petition to Compel Arbitration.  Said Petition seeks relief on the ground that the parties' written excess workers' compensation insurance agreement, INA Policy No. XWC 8388, with a policy period from January 1, 1980 to January 1, 1982 ("the Policy"), calls for arbitration of the dispute that has arisen between Matson and INA regarding the valuation of certain indemnity claims presented by Matson, but INA has refused and continues to refuse to arbitrate and Matson therefore has no other adequate remedy to compel INA to submit the dispute to arbitration other than to proceed by way of this Petition.  This matter will be presented to the Court at the time and place stated above on the basis of this Petition, the attached Memorandum of Points and Authorities and the concurrently filed Declarations of Barbara Bodager and Ingrid Leverett.[1]

    **WHEREFORE**, Matson prays for an order compelling INA to arbitrate said dispute with Matson in San Francisco, California in accordance with the Policy's arbitration provision, and for such other and further relief as the Court deems just and proper.

### JURISDICTION

    1.    Matson is informed and believes and thereon alleges that jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between the parties, as alleged below.  Additional authority supporting this Court's jurisdiction is the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and in particular 9 U.S.C. § 4[2].

---

[1] Hereafter, references to these declarations shall be to the "Bodager Decl." or the "Leverett Decl.", as applicable, followed by reference to the relevant paragraph number and / or exhibit.

[2] 9 U.S.C. § 4 provides in relevant part as follows:

    A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

-1-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

2.      Matson is a corporation incorporated under the laws of the State of Hawaii, and having a corporate office in Oakland, California.  Matson is licensed to, and does, conduct business in California.  At the time of issuance of the maritime insurance policy that is the subject of this Petition, Matson was a California corporation with its headquarters and principal place of business in San Francisco, California.

3.      Matson is informed and believes that INA is, and at all times relevant hereto was, a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

### INTRADISTRICT ASSIGNMENT / VENUE

4.      Intradistrict assignment and venue are proper in the San Francisco Division of the United States District Court for the Northern District of California.  The insurance Policy at issue in this case expressly requires the subject dispute to be arbitrated in San Francisco, California.  Moreover, the negotiations that culminated in the issuance of the Policy took place in San Francisco, where Matson then had its corporate headquarters.  In addition, the broker that obtained the Policy on Matson's behalf, Johnson & Higgins, also then had its headquarters in San Francisco.  Finally, the Policy was delivered to Matson at its headquarters in San Francisco.

### GENERAL ALLEGATIONS

**A.      The Policy and its Arbitration Clause.**

5.      In 1980 INA issued the Policy—an "Excess Workmen's Compensation and Employers' Liability Policy"—to Matson.  The Policy was effective from January 1, 1980 to January 1, 1982, and it included, among other things, Endorsement #6—which is entitled "Revised Annuity Endorsement."  It is this Endorsement #6 that contains the agreement between Matson and INA to establish the value of certain claims, such as Permanent Total Disability ("PTD") and death claims, and to arbitrate disputes as to valuation when they cannot agree.  The Policy is attached hereto as **Exhibit A to the Declaration of Barbara Bodager**.

6.      The Policy provides coverage to Matson for excess losses it sustains because of compensation and other benefits Matson is required to pay—under the workers' compensation

laws, including the federal Longshore and Harbor Workers' Compensation Act ("LHCWA")—as a result of injuries by accident that occurred while the INA Policy was in effect. The Policy's Endorsement #6 provides a special valuation process to determine the amount INA must pay Matson on account of losses Matson sustains in cases involving permanent total disability. Endorsement #6 requires all disputes over the value of indemnity claims based on permanent total disability or death cases to be resolved through binding arbitration in San Francisco.

7.      Endorsement #6 is mandatory for all claims of compensable permanent total disability or death. Endorsement #6 does two things. First, it obligates INA and the insured to follow a specified claims-adjustment procedure for all claims of compensable permanent total disability or death. Second, Endorsement #6 requires all disputes between Matson and INA over the value of such claims to be resolved through binding arbitration to be held in San Francisco, California. Both of these requirements—the prescribed adjustment procedure and the arbitration provision—are obligatory for all claims of compensable permanent total disability or death.

8.      Matson and/or its agents, employees, or subsidiary companies paid all premiums for the Policy.

9.      Matson is a named insured under the Policy.

**B.      The Underlying Claimants.**

10.      Matson's indemnity claim that is the subject of this Petition is based on the disabilities of former Matson employees Homer Catt, Rudy Ceballos, Joe Comparsi, Benjamin Duvauchelle, Hyam Ganish, Norman E. Hutchins, Lyle Hyde, Alfred Musumeci, Harry Perry, Henry Randolph, Walter E. Stayart and Elijah West (the "Claimants"). The Claimants were Matson employees who suffered injuries—during the INA Policy period, while working for Matson—that left each individual permanently totally disabled. Matson was ordered to pay, has paid, and continues to pay statutory compensation and medical benefits on behalf of the Claimants, from the dates of their disabling injuries through the present (except in the case of those claimants who have died).

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-3-

11.     Some of the benefit payments made by Matson on behalf of the Claimants were made through assessment payments that funded a trust fund established under the LHWCA (hereafter referred to interchangeably as the "Second Injury Fund" or "Special Fund" or "Fund").  That Fund has made direct payments of compensation benefits to each of the Claimants, discharging Matson's legal liability for providing such benefits.  In return, Matson has been obligated to fund—through annual assessment payments—more than half of the Special Fund's payments to the Claimants.

### C.     The Dispute.

12.     A dispute between Matson and INA has arisen concerning the value of Matson's indemnity claims for its losses on account of each Claimant's permanent total disability.

13.     Pursuant to Endorsement #6, INA is obligated to make a determination of the "Annuity Value or Value of the Claim" for each permanent total disability (sometimes hereafter "PTD") or death claim presented by Matson.  Endorsement #6 contemplates that a valuation may be performed several years after a claimant's disabling injury occurred, but it instructs that—whenever the valuation is actually completed—it is to be done "as of" the date of maximum medical improvement ("MMI") as reflected in the award that was entered in favor of the claimant.   This involves valuing a claim retrospectively on the basis of what was known or discoverable at the MMI date concerning the total amount of compensation and medical benefits the claimant would receive over the course of his or her lifetime (the benefits awarded are for life, and spousal death benefits can extend for years beyond the claimant's death).

14.     The valuations in this case have three steps.  The first step involves projecting forward—from dates in the 1980s when awards were entered in favor of each of the Claimants—and estimating, based on their life expectancies at that time, the total amounts of compensation and medical benefits each Claimant would have been expected to end up receiving, from the MMI date forward, over the course of the rest of his life (and, if married, his spouse's life).  The second step involves adding, to the total value being calculated, all the

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-4-

1   benefits that had already been received by each Claimant by the MMI date.  The valuations are

2   to be based solely on the facts that were knowable in the 1980s, and the reasonable

3   expectations that would have existed at that time.

4         15.    Endorsement #6 specifically provides for a retrospective valuation because it

5   states that a permanent total disability claim's value shall be established "as of the time" that

6   compensable permanent total disability status was "finally established" which is the MMI date.

7   There is no requirement that the valuation must actually be performed at the time the

8   Claimants became PTD in fact; as here, the valuation may be made months or even years later.

9         16.    Once it has completed its valuations of Matson's indemnity claims for losses

10  from the Claimants' disabilities, INA is obligated by Endorsement #6 to promptly notify

11  Matson of the claim values it has established.  Then, within ninety days after INA has

12  communicated those values to Matson, and assuming the parties have reached agreement as to

13  the claims' valuations, Matson "shall select either Option (1) or Option (2)."  Option (1) would

14  involve Matson "transferring all [further] liabilities on the claim[s] up to the policy limit to

15  INA."  Option (2) would involve INA promptly paying to Matson each claim's "Annuity

16  Value or Value of the Claim" (less the retention), "thereby relieving INA of all future

17  liabilities under the policy as respects [those] claim[s]."

18        17.    Endorsement #6, at section 2, prescribes the manner in which each Claimant's

19  claim must be valued.  Specifically, section 2 of Endorsement #6 provides in relevant part as

20  follows:

21              For purposes of Option (1) and Option (2) above, the
            Annuity Value of any claim arising from accident or disease to an

22          individual shall be the annuity value of that total claim, including
            but not limited to all compensation amounts paid and future, and

23          medical benefits paid and future, whether such compensation
            amounts paid or medical benefits paid were based on permanent

24          total disability status or otherwise, based upon open market pricing
            of the annuity with a rate of escalation assumption agreed upon

25          between INA and the insured.  In the event that open market
            annuities are not available for this purpose, the Value of the Claim

26          shall be determined as the value of that total claim (unescalated
            and nondiscounted) as established by standard INA reserving

27          practices.  Either the Annuity Value or Value of the Claim will be

28

-5-

PETITION TO COMPEL ARBITRATION                          Case No.

> established as of the time that compensable permanent total
> disability status has been finally established, or compensable status
> of a death claim has been finally established.

18. For each of the 12 claims, INA has contended that the claim has no value at all (zero dollars) because it argues that it has no indemnity obligation.

19. Matson disagrees with INA's valuations of each of the claims. Matson contends that the value of each claim is as set forth in the chart below. Each of Matson's claim valuations presented below was calculated as specified in Endorsement #6. That is, each claim valuation was calculated "as of" the date the Claimant's compensable permanent total disability status was finally established by a physician.

| Claimant | Matson's Claim Valuation (Net of Retention) |
|---|---|
| Homer Catt | $  289,021.21 |
| Rudy Ceballos | $  407,836.89 |
| Joe Comparsi | $  698,394.15 |
| Benjamin Duvauchelle | $  117,944.86 |
| Hyam Ganish | $  355,148.53 |
| Norman E. Hutchins | $  351,025.47 |
| Lyle Hyde | $  220,818.77 |
| Alfred Musumeci | $  162,146.35 |
| Harry Perry | $  195,368.72 |
| Henry Randolph | $  480,815.05 |
| Walter E. Stayart | $   41,841.69 |
| Elijah West | $  196,267.36 |
| Total for all Claimants (Net of Self-Insured Retentions) | $3,516,629.55 |

/ / /

/ / /

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PETITION TO COMPEL ARBITRATION                          Case No.

**D.      Endorsement #6 Requires All Disputes Concerning the Valuation of a Claim To Be Resolved By Binding Arbitration.**

20.      Endorsement #6 contains an arbitration provision (at section 3) that provides as follows:

> In the event that INA and the insured cannot agree upon the Annuity Value or Value of the Claim, the matter shall be submitted to binding arbitration in San Francisco, California.  The parties shall attempt to agree upon a single neutral arbitrator and if they so agree, the arbitration shall be conducted before that single neutral arbitrator.  If the parties cannot agree upon a single neutral arbitrator, the arbitration shall be conducted before three arbitrators, of which each party shall select one, and the third, a neutral arbitrator, shall be selected by the two arbitrators selected by the parties.  If there are three arbitrators, the decision of two of them shall be binding.  Arbitration shall be in accordance with the provisions of California Code of Civil Procedure sections 1280 et seq., and the provisions of California Code of Civil Procedure section 1280.5 are specifically incorporated herein.

21.      By letter dated August 30, 2013, and in follow-up telephone conversations between counsel for Matson and counsel for INA, Matson demanded that the parties' dispute concerning the proper valuation of each of Matson's 12 PTD claims be "submitted to binding arbitration in San Francisco, California" as required by Endorsement #6.

22.      In its letter dated October 7, 2013 and in the two subsequent telephone calls among counsel, INA refused to submit to binding arbitration as required by Endorsement #6.

23.      Matson has consistently sought to arbitrate its dispute with INA and has never waived its right under Endorsement #6 to arbitrate the issue of the amount of contract benefits due to Matson, based on the valuations of the 12 claims.

## PRAYER FOR RELIEF

WHEREFORE, Matson prays for an Order by this Court requiring INA to submit to binding arbitration with Matson in San Francisco, California, pursuant to the provisions of

/ / /

/ / /

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    Endorsement #6 of the Policy, for the purpose of determining the amounts owed to Matson by

2    INA, based on the valuations of the 12 subject PTD claims.

3

4    Dated:  December 2, 2013                    PILLSBURY & LEVINSON, LLP
                                                 Philip L. Pillsbury, Jr.
5                                                Ingrid S. Leverett

6                                                

7

8                                                _____
                                                 Philip L. Pillsbury, Jr.
9
                                                 Attorneys for Petitioner
10                                               MATSON TERMINALS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITION TO COMPEL ARBITRATION                                    Case No.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1

## <u>MEMORANDUM OF POINTS & AUTHORITIES</u>

2

**I.     FACTS**

3      Matson's indemnity claims are based on the disabilities of former Matson employees

4  Homer Catt, Rudy Ceballos, Joe Comparsi, Benjamin Duvauchelle, Hyam Ganish, Norman E.

5  Hutchins, Lyle Hyde, Alfred Musumeci, Harry Perry, Henry Randolph, Walter E. Stayart and

6  Elijah West (the "Claimants").  Bodager Decl. at ¶ 2.  The Claimants were Matson employees

7  who suffered injuries—during the INA Policy period, while working for Matson—that left

8  each individual permanently totally disabled.  *Id.*  Matson was ordered to pay, has paid, and

9  continues to pay statutory compensation and medical benefits on behalf of the Claimants, from

10  the dates of their disabling injuries through the present (except in the case of certain Claimants

11  who have died).  *Id.*

12      Some of the benefit payments made by Matson on behalf of the Claimants were made

13  through assessment payments that funded a trust (the "Second Injury Fund" or "Special Fund"

14  or "Fund") established under the Longshore and Harbor Workers' Compensation Act (the

15  "LHWCA" or the "Act").  *Id.*

16      For a claimant to be admitted to the Second Injury Fund, it must be established that the

17  claimant was already permanently partially disabled at the time a second injury rendered him

18  or her permanently totally disabled.  *Id.*  Having a claimant admitted to the Fund is

19  advantageous to an employer and its insurers because it is a way of limiting the cost of

20  statutory benefit awards, by having some portion shared industry-wide.  *Id*. The industry-wide

21  sharing is funded by annual assessments on all participants.  *Id.*

22      The Fund has made direct payments of compensation benefits to each of the Claimants,

23  thereby discharging Matson's legal liability—under awards issued to each of the Claimants—

24  for providing such benefits.  *Id.*  Pursuant to the Act, Matson has been obligated to pre-fund

25  more than 50% of the Fund's payments to its own employees, including the Claimants.  *Id.*

26  This is accomplished through assessment payments Matson makes each year.  *Id.*

27      In 1980 INA issued an "Excess Workmen's Compensation and Employers' Liability

28  Policy" to Matson (the "INA Policy" or the "Policy").  Bodager Decl. at ¶ 3 and **Exh. A**.  The

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-1-

Policy was effective from January 1, 1980 to January 1, 1982, and it included, among other things, Endorsement #6—which is entitled "Revised Annuity Endorsement." *Id*. This Endorsement #6 contains an agreement between Matson and INA to arbitrate all disputes concerning the value of permanent total disability claims (i.e., the amount INA must pay Matson, under the Policy, on account of such claims). *Id*.

The Policy covers Matson for excess losses it sustains because of compensation and other benefits Matson is required to pay—under the workers' compensation laws, including the LHCWA—as a result of injuries by accident that occurred while the INA Policy was in effect. *Id*. The Policy has a retention (or retained limit) of $250,000 per claim, and limits of $5 million per claim. *Id*. The Policy's Endorsement #6 mandates a specific claims-adjustment process to determine the amounts that INA must pay Matson on account of losses Matson sustains in cases involving permanent total disability. *Id*. This includes the cases of each of the 12 Claimants. Endorsement #6 requires all disputes over the value of indemnity claims based on permanent total disability cases to be resolved through binding arbitration in San Francisco, California. *Id*.

Endorsement #6 governs all claims of compensable permanent total disability or death. By its terms, Endorsement #6 replaces Endorsement #2, Annuity Endorsement, which covered the same subject matter as Endorsement #6. Endorsement #2, in turn, replaced the Policy's Insuring Agreements at section II. Thus Endorsement #6 replaces section II of the Policy's Insuring Agreement ("Limit of Liability—Retained Limit").[3] *Id*.

---

[3] Although Endorsement #6 proclaims that "the Annuity Endorsement number 2 is deleted in its entirety," it is apparent that that language does not include the sentence at the beginning of Endorsement #2 indicating what portion of the Policy was being replaced, revised or amended, i.e., section II of the Policy's Insuring Agreement. *See Garamendi v. Mission Ins. Co*., 131 Cal. App. 4th 30, 42 (2005) (courts are required to apply common sense in determining which of two or more reasonable interpretations meets the objectively reasonable interpretations of insured); *Penn-America Ins. Co. v. Mike's Tailoring*, 125 Cal. App. 4th 884, 886 (2005) (concluding policy provision "must be given its common sense interpretation"). In the last analysis, should anything in section II of the Policy's Insuring Agreement conflict with anything in Endorsement #6, Endorsement #6 controls. *Home Indem. Co. v. Mission Ins. Co*., 251 Cal. App. 2d 942, 956 (1967) ("[I]f there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls."); *see also Am. Way Cellular, Inc. v. Travelers Prop. and Cas. Co. of Am*., 216 Cal.App.4th 1040, 1057 (2013).

PETITION TO COMPEL ARBITRATION                    Case No.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

Endorsement #6 does two things.  First, it obligates INA and Matson to follow a specific procedure—detailed in the Endorsement—for adjusting all claims involving permanent total disability or death.  *Id*.  *See* Endorsement #6 at section 1 ("**shall** elect either Option (1) or Option (2)"), section 2 ("**shall** be the annuity value" and "**shall** be determined")).  Second, Endorsement #6 requires all disputes between Matson and INA over the value of such claims to be resolved through binding arbitration in San Francisco.  *Id*. (s*ee* Endorsement #6 at section 3).  Both of these requirements—the prescribed adjustment procedure and the arbitration provision—are mandatory for permanent total disability claims.

By letters dated August 6, 2013 and August 30, 2013 Matson asked INA to indemnify it for losses exceeding its retentions that were incurred as a result of compensation and other covered benefits Matson paid to or on behalf of the Claimants.  Leverett Decl. at ¶¶ 1-2, **Exhs. A and B**.  INA denied Matson's indemnity claim by a letter dated October 7, 2013.  In its letter of August 30, 2013, and again during two subsequent telephone conversations with INA's attorneys, Matson asked INA to state the value of each of the 12 referenced claims under the procedure specifically required by Endorsement #6.  *Id*. at ¶ 4.  In its letter of October 7, 2013 and in subsequent telephone conversations with Matson's attorneys, INA responded only by asserting that, in its view, Matson's claims are not covered.  *Id*. at ¶ 3, 5 and **Exh. C**.  This amounts to an assertion that the value of each of the 12 claims is zero.  Because there was a dispute between the parties concerning the value of the 12 PTD claims, Matson asked INA to engage in arbitration in San Francisco—as provided in Endorsement #6—to resolve the dispute.

INA's denial of coverage was based on its erroneous contention that no part of Matson's assessment payments—not even those portions that directly pre-funded half of the compensation payments the Claimants received from the Special Fund—fell within the Policy's coverage.  *See id*. at ¶ 3, **Exh. C**.  In addition to denying coverage, INA also has refused to engage in arbitration with Matson to resolve the dispute about the amounts owed to Matson by INA on account of the claims.  *See id*. at ¶¶ 4-5.  Matson nevertheless proceeded to complete its own claim valuations.  Bodager Decl. at ¶ 5.  It did this in the fashion prescribed

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

by Endorsement #6.  *Id*. The values calculated by Matson are as follows:

| Claimant | Matson's Claim Valuation (Net of Retention) |
|---|---|
| Homer Catt | $ 289,021.21 |
| Rudy Ceballos | $ 407,836.89 |
| Joe Comparsi | $ 698,394.15 |
| Benjamin Duvauchelle | $ 117,944.86 |
| Hyam Ganish | $ 355,148.53 |
| Norman E. Hutchins | $ 351,025.47 |
| Lyle Hyde | $ 220,818.77 |
| Alfred Musumeci | $ 162,146.35 |
| Harry Perry | $ 195,368.72 |
| Henry Randolph | $ 480,815.05 |
| Walter E. Stayart | $    41,841.69 |
| Elijah West | $ 196,267.36 |
| Total for all Claimants (Net of Self-Insured Retentions) | $3,516,629.55 |

## II.   ARGUMENT

Matson brings the present Petition under 9 U.S.C. § 4, which permits a party seeking contractual arbitration to bring an original proceeding in federal district court to compel arbitration under the Federal Arbitration Act ("FAA").

Endorsement #6 contains a mandatory arbitration provision that provides, in relevant part, as follows:

> In the event that INA and the insured cannot agree upon the Annuity Value or Value of the Claim, the matter shall be submitted to binding arbitration in San Francisco, California.

Endorsement #6, section 3.  An endorsement controls over anything in the printed policy form. *Home Indem. Co. v. Mission Ins. Co.*, 251 Cal. App. 2d 942, 956 (1967) ("[I]f there is a conflict in meaning between an endorsement and the body of the policy, the endorsement

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

controls."); *see also Am. Way Cellular, Inc. v. Travelers Prop. and Cas. Co. of Am.*, 216 Cal.App.4th 1040, 1057 (2013).  This is particularly true where, as here, the endorsement is "specially prepared" or typewritten, whereas the body of the policy is a form.  *Id.* ("[U]nder the provisions of section 1651 of the Civil Code, (fn. omitted) the written or specially prepared portions of a contract control over those which are printed or taken from a form.").

Section 3 of Endorsement #6 goes on to direct the method by which the parties are to select arbitrators, and it expressly provides that California law shall govern the proceedings— specifically, the California Arbitration Act ("CAA"), Cal. Civ. Proc. Code § 1280 et seq. California law therefore also governs this Court's determination of this Petition to Compel Arbitration.  *Mastick v. TD Ameritrade, Inc.*, 209 Cal. App. 4th 1258, 1264 (2012) ("[I]f the parties agree that California law 'governs' the contract, the CAA applies.").

"Through this detailed statutory scheme [the CAA], the Legislature has expressed a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Moncharsh v. Heily & Blasé*, 3 Cal.4th 1, 9 (1992) (internal quotation marks omitted).  "Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts." *Moncharsh*, 3 Cal.4th at 9 (internal quotation marks omitted).  "[T]he decision to arbitrate grievances evinces the parties' intent to bypass the judicial system . . . . " *Moncharsh*, 3 Cal.4th at 10.

> A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted unless it may be said with positive assurance that the arbitration [provision] is not susceptible of an interpretation that covers the asserted dispute. [Citations and internal quotation marks omitted.]  To the extent possible, an exclusionary clause in an arbitration provision should be narrowly construed.  [Citations omitted.]
>
> The burden is on the party opposing arbitration to show the agreement cannot be interpreted to apply to the dispute.... Whether a contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself.... [Citations and internal quotation marks omitted.]

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PETITION TO COMPEL ARBITRATION                    Case No.

*Gravillis v. Coldwell Banker Residential Brokerage Co*., 143 Cal.App.4th 761, 771-72 (2006). *See also Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1286 (9th Cir. 2009) (upholding duty to arbitrate where arbitration agreement was ambiguous, including what arguably was a non-arbitrable issue).

The discretion of a court presented with an agreement to arbitrate under the CAA is limited.  Under section 1281.2 of the California Code of Civil Procedure, a trial court must

> enforce a written arbitration agreement unless one of three limited exceptions applies.  [Citation omitted.]  Those statutory exceptions arise where (1) a party waives the right to arbitration; (2) grounds exist for revoking the arbitration agreement; and (3) pending litigation with a third party creates the possibility of conflicting rulings on common factual or legal issues.

*Acquire II, Ltd. v. Colton Real Estate Group*, 213 Cal. App. 4th 959, 967 (2013).  No basis exists for applying any of these exceptions here.  Matson does not expect INA to contend that the second or third exceptions are applicable here, and there has been no waiver by Matson for the reasons explained below in Section C.

Federal authority applying the FAA in the context of petitions to compel arbitration is consistent with California law applying the CAA.  "Questions of arbitration must be addressed with a healthy regard for the federal policy favoring arbitration."  *Quackenbush v. Allstate Ins. Co*., 121 F.3d 1372, 1380 (9th Cir. 1997).  In the Ninth Circuit, valid arbitration agreements "shall be rigorously enforced."  *Republic of Nicaragua v. Standard Fruit Co*., 937 F.2d 469, 475 (9th Cir. 1991) (internal quotation marks omitted).

> The standard for demonstrating arbitrability is not high. The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

*Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 719 (9th Cir. 1999).  "To require arbitration, [the movant's] factual allegations need only "touch matters' covered by the contract containing the arbitration clause."  *Id*. at 721 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 624 n. 13 (1985)).  "[A]ny doubt concerning the scope of arbitrable issues

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-6-

should be resolved in favor of arbitration, whether the problem at hand is construction of the

contract language itself or the allegation of waiver, delay, or a like defense to arbitrability."

*Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998) (quoting *Moses H. Cone*

*Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)) (internal quotation

marks omitted).

Federal courts applying the FAA—just like California courts applying the CAA—

resolve in favor of compelling arbitration any ambiguities in the arbitration agreement

concerning whether or not a particular question is arbitrable.  *See Mastrobuono v. Shearson*

*Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) ("due regard must be given to the federal policy

favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in

favor of arbitration") (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland*

*Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)) (internal quotation marks omitted).  *See also*

*Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25 ("The Arbitration Act establishes that, as a

matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved

in favor of arbitration, whether the problem at hand is the construction of the contract language

itself or an allegation of waiver, delay, or a like defense to arbitrability.").

Like a court applying the CAA, a court presented with a petition to compel arbitration

under the FAA operates with limited discretion.  The FAA:

> leaves no place for the exercise of discretion by a district court, but instead
> mandates that district courts shall direct the parties to proceed to
> arbitration on issues as to which an arbitration agreement has been signed.
> [Citation and internal quotation marks omitted.]  The court's role under the
> Act is therefore limited to determining (1) whether a valid agreement to
> arbitrate exists and, if it does, (2) whether the agreement encompasses the
> dispute at issue. *See* 9 U.S.C. § 4; [further citations omitted]. If the
> response is affirmative on both counts, then the Act requires the court to
> enforce the arbitration agreement in accordance with its terms.

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.* 207 F.3d 1126, 1130 (9th Cir. 2000); *see also*

Schwarzer et al., California Practice Guide:  Federal Civil Procedure Before Trial, ¶16:99 (The

Rutter Group) ("Rutter") ("In ruling on an application to compel, the court may inquire only as

to whether: (1) there is an agreement to arbitrate; (2) there are arbitrable claims; and (3) there

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-7-

1   has been a waiver of the right to arbitrate by the moving party or other defense to

2   arbitration.").

3      Here, the three elements that must be shown to establish Matson's right to an order

4   compelling arbitration are all in place:  (1) there is an agreement to arbitrate, (2) the parties'

5   dispute centers on the very issues the parties have agreed to arbitrate, and (3) Matson has not

6   waived its right to arbitrate.  As a result, Matson's Petition should be granted and INA should

7   be compelled to arbitrate.

8

9   **A.   The Parties Agreed to Arbitrate Disputes About the Amounts of Benefits Payable for Permanent Total Disability Losses.**

10      Endorsement #6 is mandatory, and it governs not only the method of adjustment of

11   permanent total disability claims, but also the resolution of disputes concerning the value of

12   such claims (i.e., all disputes about the amounts INA must pay Matson, if any, on account of

13   such claims).  Matson is a named insured under the INA Policy, and the Policy was executed

14   by Matson's agent and authorized representative, Johnson & Higgins.  It was also signed by

15   INA's authorized agent.  *See* Bodager Decl. at ¶ 3, **Exh. A**.  (Policy at pages 1-2).  Matson

16   paid all premiums due under the Policy.  Bodager Decl. at ¶¶ 3-4.

17      The express purpose of Endorsement #6 was to cover precisely the kinds of claims that

18   we have here—PTD claims of disabled Matson employees who were injured on the job while

19   the INA Policy was in effect.  The comprehensive and compulsory nature of Endorsement #6

20   is clear from the very first paragraph, which provides:

21          It is agreed that the following provisions apply only with respect to
            claims under the United States Longshoremen's and Harbor Workers'
22          Compensation Act (33 U.S.C. §901 et seq.) involving permanent total
            disability or death[.]
23

24   *Id*. at ¶ 3, **Exh. A** (Endorsement #6 at 1).  The only matters expressly excluded from the broad

25   scope of Endorsement #6 are claims that (1) do not fall under the LHWCA and (2) do not

26   involve permanent total disability or death; having thus restricted the scope of Endorsement #6,

27   the parties were aware that they could have—and thus they would have—expressly articulated

28   any additional restrictions intended to constrain the sweep of the endorsement.  *See also id.*

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-8-

(Endorsement #6 at section 1 ("**shall** elect either Option (1) or Option (2)"), section 2 ("**shall** be the annuity value" and **shall** be determined.")).  Endorsement #6 goes on to dictate the procedure by which these claims are to be adjusted.  Under section 1 of Endorsement #6, Matson is obliged to choose one of two options—either Option 1 (Matson pays INA the remainder, if any, of its self-insured retentions; responsibility for all further losses is transferred to INA; and INA reimburses Matson for losses incurred in excess of its retentions) or Option 2 (INA pays Matson one of two values for each claim—the Annuity Value or the Value of the Claim—less the retention; and responsibility for all further losses remains with Matson).  *Id*. at p. 1.

Section 2 of Endorsement #6 then directs how the Annuity Value and the Value of the Claim are to be determined.  *Id*. at pp. 2-3.  Matson and INA must calculate annuity values "based on open market pricing" if annuities of that kind are available and, if not, the parties must determine claim values using "standard INA reserving practices."  *Id*. at p. 2.  Essentially, this requirement entails estimating how long a claimant will live after the date of the award, multiplying the number of months of life expectancy by the monthly compensation rate the claimant is receiving at the time of the award, adding all the compensation the claimant received before the award, adding the medical benefits received by the claimant before the award, and finally adding estimated future medical benefits the claimant would reasonably be expected to receive from the date of the award till the end of his or her life.  From the total amount the retention is subtracted, and INA pays the balance to Matson.

Endorsement #6 also requires the parties to arbitrate disputes about the value of PTD claims—that is, the amount INA must pay Matson on account of such claims:

> In the event that INA and the insured cannot agree upon the Annuity Value or the Value of the Claim, the matter shall be submitted to binding arbitration in San Francisco, California.  The parties shall attempt to agree upon a single neutral arbitrator and if they so agree, the arbitration shall be conducted before that single neutral arbitrator.  If the parties cannot agree upon a single neutral arbitrator, the arbitration shall be conducted before three arbitrators, of which each party shall select one, and the third, a neutral arbitrator, shall be selected by the two arbitrators selected by the parties.  If there are three arbitrators, the decision of two of

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

them shall be binding.  Arbitration shall be in accordance with the provisions of California Code of Civil Procedure sections 1280 et seq., and the provisions of California Code of Civil Procedure section 1280.5 are specifically incorporated herein.

Bodager Decl. at ¶ 3, **Exh. A**.  (Endorsement #6 at p. 3.)

INA agreed to the procedures set forth in Endorsement #6 for adjusting PTD claims, and it also agreed to arbitrate any disputes that arose with Matson over claim valuations.  A claim valuation dispute is what we have here now.  Matson values the 12 claims at a total of approximately $3.52 million, and INA values the claims at a total of zero dollars.  This dispute falls squarely within the scope of the parties' arbitration agreement.  INA bound itself to resolve such disputes with Matson by arbitration, and this Court should enforce that promise.

**B.    Each of Matson's Indemnity Claims Presents the Same Arbitrable Issue: What Amount of Benefits is Payable for this Permanent Total Disability Loss?**

**1.    Matson and INA Dispute the Value of Each Claim, and Endorsement #6 Requires Such Disputes to Be Arbitrated.**

Each of Matson's 12 indemnity claims presents the very same issue INA agreed to arbitrate:  what sum must INA pay to indemnify Matson for its excess permanent total disability loss because of compensation and other benefits Matson was obligated to pay to satisfy the awards entered in favor of the 12 Claimants?  *See* Bodager Decl. at ¶ 3, **Exh. A** (Endorsement #6 at p. 3 ("In the event that INA and the insured cannot agree upon the Annuity Value or the Value of the Claim, the matter shall be submitted to binding arbitration in San Francisco, California.")).  Matson first formally tendered its indemnity claim to INA by letter dated August 6, 2013.  *See* Leverett Decl. at ¶ 1 and **Exh. A**.  Matson then revised its claim on August 30, 2013.  *See* Leverett Decl. at ¶ 2 and **Exh. B**.

Matson's August 30 letter expressly invoked INA's (and Matson's) obligation to follow the procedure mandated by Endorsement #6 for adjusting PTD claims.  Matson's August 30, 2013 letter pointed out INA's obligation to:

make a determination of the 'Annuity Value or Value of the Claim' for each permanent total disability ('PTD') or death claim presented by Matson . . . .  The Endorsement requires the valuations to be performed

PETITION TO COMPEL ARBITRATION                                              Case No.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

retrospectively on the basis of the facts that were then known and the reasonable expectations the parties then had or could have had (at 'the time that compensable permanent total disability status [was] finally established' for each of the 12 PTD Claimants) regarding the amounts that had already been paid by Matson and the likely cost of future compensation and medical benefits that were then still owed by Matson to those 12 Claimants.

*See* Leverett Decl. at ¶ 2, **Exh. B**.

Matson advised INA of its obligation to determine the "Annuity Value or Value of the Claim," and Matson's subsequent obligation, assuming the parties agreed upon the claims' valuations, to select either Option 1 or Option 2, as set forth in Endorsement #6.  *See id*. Matson also explained that it had not yet finalized its own calculations of the "Annuity Value or Value of the Claim" for each of the 12 claims, but it advised INA that Matson "reasonably believes those values will all turn out to be higher than the corresponding values included in Matson's indemnity demand of August 6, 2013."  *id*.  Matson then demanded arbitration "[i]n the event INA determines that any PTD Claim's value is less than the amount demanded by Matson[.]"  *id*.

INA responded on October 7, 2013, denying Matson's claims and refusing to arbitrate the dispute with Matson.  *See* Leverett Decl. at ¶ 3, **Exh. C**.  But nothing in INA's denial letter explained why it is not bound to arbitrate the parties' dispute concerning the valuation of the 12 claims.  *See id*.  Ultimately, INA's position is that it owes Matson zero dollars on account of each of the 12 claims.  *See id*.  INA's valuations conflict with Matson's valuations, and the resulting dispute therefore must be resolved by arbitration under the terms of Endorsement #6.

### 2.   Peripheral Issues Raised By INA, Which Are Relevant Only Insofar as They Impact the Central Arbitrable Issue of Claim Valuation, Can and Should Be Resolved By the Arbitrators.

INA's coverage defenses are valuation-based.  INA erroneously contends that no part of Matson's assessment payments qualifies as a covered loss, and it argues that there is no coverage because the losses it concedes are covered are allegedly less than the amount of the retention.  *See* Leverett Decl. at ¶ 3, **Exh. C**.  INA's defenses are designed to impact

-11-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

Endorsement #6's claim adjustment scheme, and to result in a valuation of zero.  This is the very type of dispute that must be submitted to arbitration.

INA may argue that the Policy's arbitration provision is of limited scope, but that is wrong.  It covers the central issue presented by every claim:  how much must the insurer pay on account of the claim.  Logically, any collateral or peripheral issue that impacts a claim's value must also be resolved at the same time in the same arbitration, or the entire benefit of arbitration will be lost.  *See Gravillis v. Coldwell Banker Residential Brokerage Co.*,143 Cal.App.4th 761, 771-72 (2006) ("A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted unless it may be said with positive assurance that the arbitration [provision] is not susceptible of an interpretation that covers the asserted dispute. . . . The burden is on the party opposing arbitration to show the agreement cannot be interpreted to apply to the dispute . . . .").  *See also Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1286 (9th Cir. 2009) (upholding duty to arbitrate where arbitration agreement was ambiguous, even though an arguably non-arbitrable issue was involved).

> When the parties "have agreed to arbitrate some matters pursuant to an arbitration clause, . . . any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." [*Granite Rock Co. v. International Broth. of Teamsters* (2010) US, 130 S.Ct. 2847, 2857 (emphasis in original; internal quotes omitted)]

Rutter at ¶16.99.6.

The collateral or peripheral issues INA identified in its letter of October 7, 2013 are: whether Matson's allegedly late notice of claim allows INA to avoid responsibility for Matson's covered loss, and whether Matson's assessment payments fall outside the Policy's coverage because the compensation benefits they pre-funded were paid to the Claimants through the Fund, rather than being sent directly to the Claimants by Matson.  Since both of these arguments are offered in an effort to establish that the claims have no value and that INA is not obligated to pay Matson any money on account of the 12 claims, these are precisely the types of issues that should be rolled into the arbitration.  These issues are integral to the

-12-

central, arbitrable dispute over the value of each claim.  Endorsement #6 unambiguously

requires Matson and INA to submit that dispute to binding arbitration.  *See* Bodager Decl. at

¶ 3, **Exh. A**.  (Endorsement #6 at 3 ("In the event that INA and the insured cannot agree upon

the Annuity Value or Value of the Claim, the matter shall be submitted to binding arbitration

in San Francisco, California.")).

Any other issues INA may raise are all inextricably intertwined with, and

interdependent upon, the valuation of Matson's claims.  One such issue is INA's laches

defense.  *See* Leverett Decl. at  ¶ 3, **Exh. C** at pp. 4, 6.  A laches defense falls within the scope

of what must be arbitrated when it is asserted in response to an arbitrable claim.[4]  *See Howsam*

*v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002) (holding that whether a NASD rule

imposing a 6-year "statute" of limitations on arbitration "is a matter presumptively for the

arbitrator, not for the judge"); *International Union of Operating Engineers, Local 150, AFL-*

*CIO v. Flair Builders, Inc.*, 406 U.S. 487, 490-91 (1972) (issue of laches was arbitrable).

INA has also contended, wrongly, that Matson ceased being liable to the Claimants for

the full amounts of their awards once they were admitted to the Special Fund.  Based on that

erroneous premise, INA then argued that none of the compensation paid to the Claimants after

their admission was covered under the INA Policy, even though half of it was pre-funded by

Matson's assessment payments.  *See* Leverett Decl. at ¶ 3, **Exh. C** at p. 7.  This issue is as

integral to the dispute concerning claim valuation as the laches defense, so it—like the laches

defense—is also arbitrable.  *See Howsam*, 537 U.S. at 84-85; *International Union of Operating*

---

[4]  In any event, this defense is unavailing.  California law imposes a substantial prejudice requirement
that must be met before coverage can be forfeited due to late notice of a claim.  *Campbell v. Allstate*
*Ins. Co.*, 60 Cal.2d 303, 305 (1963); *see generally* California Practice Guide: Insurance Litigation
(Rutter Group 2012) —¶¶3:168; 6:32-33; 7:409-411.10; *see also Shell Oil Co. vs. Winterthur Swiss Ins.*
*Co.*, 12 Cal.App.4th 715, 763 (1993) (actual prejudice requirement means insurer must show it would
have settled claim for less or taken steps that would have reduced or eliminated insured's liability).
Matson's conduct in causing the Claimants' claims to be admitted to the Special Fund (see Petition at ¶
11) is not prejudice to INA, but the opposite of that.  Essentially, INA fortuitously gained a windfall:
many years of free use of money that otherwise would have been payable to Matson long ago.  In
addition, those amounts can now be paid by INA with significantly depreciated 2013 dollars.

PETITION TO COMPEL ARBITRATION                                          Case No.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

*Engineers*, 406 U.S. at 490-91.  The paramount point is that questions concerning arbitrability should always be resolved in favor of arbitration.  *Wolsey, Ltd*, 144 F.3d at 1209.[5]

Case authority arising in analogous contexts supports referring to arbitration the issues that INA has raised.  For example, in *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1067 (N.D. Cal. 1991), the court recognized that an arbitration provision that—like the one in Endorsement #6—covered controversies relating to amounts claimed to be due ("i.e., that "relate to amounts due and owing"), was ambiguous.  *Id.* at 1067.  The court stated that controversies that "relate to amounts due and owing" necessarily includes "all <u>substantive</u> issues that would affect plaintiff's damages" and renders these issues arbitrable.  *Id.* at 1067 (emphasis added).  Similarly here, all controversies that relate to the valuation mandated by Endorsement #6 necessarily include substantive issues such as liability / coverage.[6]

*See also Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447, 1450-51 (9th Cir. 1986) (affirming order compelling arbitration under agreement that covered disputes arising out of plaintiff's employment with brokerage house, where ambiguity existed because plaintiff's

---

[5] Matson vigorously disputes INA's contention that Matson ceased having liability for the Claimants' awards once they were admitted to the Fund.  That contention directly contradicts various provisions of the LHWCA and case authority construing it, and is demonstrably false.  *See, e.g.*, 33 U.S.C. § 908(f)(2)(A) (employer retains ultimate responsibility under LHWCA for statutory benefits owed to disabled employees, even after admission to Fund); 33 U.S.C. § 918(b) (employer may be sued for LHWCA benefits as the ultimately responsible party); *B.S. Costello, Inc. v. Meagher*, 867 F.2d 722, 724 (1st Cir. 1989) (holding employer is ultimately liable under LHWCA's section 8(f)); *Nat'l Metal & Steel Corp. v. Reich*, 858 F.Supp. 62, 67 (D. Md. 1994)), *aff'd* 55 F.3d 967 (4th Cir. 1995) (recognizing LHWCA section 8(f) makes employer directly liable to injured employee; *see also LSC Holdings, Inc. v. Ins. Com'r of PA*, 151 Pa. Cmwlth. 377 (1992) (insured stated a claim against its insurer for recovery of compensation benefits indirectly paid, through LHWCA section 8(f) assessment payments, to its own employees who had been admitted to the Fund).

[6] In *Zenger-Miller*, however, unlike here, the parties' agreement included two separate dispute-resolution provisions:  (1) the arbitration provision just described and (2) an independent forum selection clause that expressly designated state or federal courts in California as the forums for issues regarding "the interpretation, breach or enforcement" of their agreement.  Given that inapposite scenario, the court in *Zenger-Miller* went on to find that the separate forum selection clause (not present in the Policy here) explicitly covered substantive issues.  The agreement's express referral of substantive issues to courts in California, the court explained, resolved the ambiguity that the court explicitly recognized would have existed without the forum selection clause (i.e., whether substantive issues were arbitrable given that they "relate to amounts due and owing"—subject matter that undisputedly <u>was</u> arbitrable).  *Id.*  Unlike the agreement in *Zenger-Miller*, the INA Policy contains no independent forum-selection clause.  The only dispute-resolution provision in Endorsement #6— indeed, the only dispute-resolution provision anywhere in the Policy—is in section 3 of Endorsement #6.

-14-

defamation claims against brokerage house arose from events that occurred <u>after</u> plaintiff had left that employment); *Bixler v. Next Fin'l Group, Inc.*, 858 F. Supp. 2d 1136, 1149 (D. Mon. 2012) (compelling arbitration of disputed transaction involving a hybrid investment instrument with traits of both a security and insurance, where parties' arbitration agreement undisputedly covered securities but incorporated by reference a financial industry rule expressly excluding insurance disputes from arbitration); *Sacks v. Dean Witter Reynolds Inc.*, 627 F. Supp. 377, 378 (C.D. Cal. 1985) (compelling arbitration of customer's <u>tort</u> claims against a brokerage house for allegedly mishandling customer's account, where the operative arbitration provisions covered disputes "arising out of or relating to this contract or the breach thereof").

Like other courts faced with a petition to compel an undisputedly arbitrable issue along with related issues whose arbitrability may be ambiguous, the Court should resolve any doubts it may have in favor of compelling the arbitration of all the collateral and peripheral issues that INA has raised (discussed above).  As previously explained, Endorsement #6 established a comprehensive procedure for adjusting LHWCA claims.  Endorsement #6 paired that comprehensive claim adjustment procedure with a provision that requires arbitration to resolve disputes concerning the value of permanent total disability claims.

The issues INA has raised were interposed solely to support its argument that the claims have zero value.  Matson's calculations pursuant to the terms of Endorsement #6 support its contention that the claims' values are substantial—in the amounts set forth in the chart above, which are well in excess of this Court's jurisdictional limits.  This clearly is just the type of dispute the parties agreed to arbitrate.  The Court should therefore resolve in favor or arbitration any doubts it may have concerning the scope of arbitral issues.

**C.    Matson Has Consistently Demanded Arbitration and Has Never Waived its Right to Arbitrate.**

Matson agreed with INA to arbitrate claims like those at issue here.  Matson never waived its right to compel arbitration, and Matson properly invokes that right now.  *See* Bodager Decl. at ¶ 7.  District courts generally resolve questions concerning arbitrability— especially those involving a claimed waiver—in favor of arbitration.  *Wolsey,* Ltd, 144 F.3d at

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-15-

1209.  "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc*., 791 F.2d 691, 694 (9th Cir.1986).  "[A]ny party arguing waiver of arbitration bears a heavy burden of proof because the right to arbitration is contractual."  *Id*. (citation and internal quotation marks omitted).

Here, Matson demanded arbitration with INA in its letter of August 30, 2013 and in two subsequent telephone calls with INA's counsel on October 30, 2013 and November 15, 2013.  *See* Leverett Decl. at ¶ 2, **Exh. B** and ¶¶ 4-5.  At no point before or after August 30, 2013 did Matson ever do or say anything inconsistent with an intention to arbitrate its claim valuation disputes with INA.  *See* Bodager Decl. at ¶ 7.

Matson anticipates INA may contend that Matson's alleged delay in submitting its indemnity demand constitutes a waiver of the right to arbitrate.  Such a defense would fail, because—throughout the period of alleged delay—Matson was unaware of the existence of its right to be indemnified (because it was unaware that its self-insured retentions had already been exceeded).  Given those circumstances, Matson was also unaware of any right (or need) to compel INA to arbitrate.  As a result, there clearly could not have been any voluntary relinquishment of a known right to compel arbitration.  Thus there was no waiver.  In any event, questions concerning whether a delay in demanding arbitration has worked a waiver must be resolved in favor of arbitration.  *Wolsey, Ltd*, 144 F.3d at 1209.

Finally, INA cannot show any prejudice from Matson's alleged delay in demanding arbitration.  *See Fisher*, 791 F.2d at 694.  Nothing—neither the passage of time nor anything else—impairs the parties' ability to fully comply now with the claim adjustment provisions of Endorsement #6, including its requirements at section 2 for ascertaining the Value of the Claim as to each Claimant.  The parties are as capable of meeting the valuation requirements of Endorsement #6 today as they would have been in the 1980s.  Indeed, Matson has already undertaken and completed the claim valuation procedure prescribed by Endorsement #6 for each of the 12 claims.  Bodager Decl. at ¶ 5.  Matson has demonstrated that there is no

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

obstacle to INA completing its own claim valuation calculations in the manner required by Endorsement #6. *Id.*

## III.    CONCLUSION

For all the reasons set forth above, the Court should GRANT Matson's Petition and compel INA to resolve all the parties' disputes concerning the amounts INA is obligated to pay Matson, by way of indemnity under the terms of the INA Policy, on account of the Claimants' 12 permanent and total disability claims.

Dated:  December 2, 2013          PILLSBURY & LEVINSON, LLP
                                  Philip L. Pillsbury, Jr.
                                  Ingrid S. Leverett

                                  _____
                                  Philip L. Pillsbury, Jr.

                                  Attorneys for Petitioner
                                  MATSON TERMINALS, INC.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-17-
PETITION TO COMPEL ARBITRATION                              Case No.