1  Ray L. Wong (SBN 84193)
   **DUANE MORRIS LLP**
2  Spear Tower
   One Market Plaza, Suite 2200
3  San Francisco, CA  94105-1127
   E-mail:rlwong@duanemorris.com
4  Phone: 415-957-3149
   Fax: 415-520-6907
5
   Attorneys for Respondent
6  INSURANCE COMPANY OF NORTH AMERICA

7

8             **IN THE UNITED STATES DISTRICT COURT FOR THE**

9        **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO COURTHOUSE**

10

11 MATSON TERMINALS, INC., AND MATSON          Case No.: CV-13-5571 LB
   NAVIGATION COMPANY, INC.
12                                              **RESPONDENT INSURANCE**
                Petitioners,                    **COMPANY OF NORTH AMERICA'S**
13                                              **OPPOSITION TO PETITIONERS**
        v.                                      **MATSON TERMINALS, INC. AND**
14                                              **MATSON NAVIGATION COMPANY,**
   INSURANCE COMPANY OF NORTH                   **INC.'S PETITION TO COMPEL**
15 AMERICA,                                     **ARBITRATION**

16              Respondent.                     Date: March 20, 2014
                                                Time: 9:30 a.m.
17                                              Dept: Courtroom C

18                                              Judge:      Hon. Laurel D. Beeler
                                                Complaint Filed:    December 5, 2013
19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF THE ISSUE TO BE DECIDED............................................................2

III. FACTUAL BACKGROUND................................................................................................2

    A. As A Self-Insured Employer, Matson Paid Assessments To The Act's Special Fund ........................................................................................................... 2

    B. Excess Policy Issued By INA To Matson................................................................. 3

        1. Insuring Agreement Of The Excess Policy................................................... 3

        2. The Revised Annuity Endorsement And Arbitration Clause...................... 4

    C. Matson's First Demand............................................................................................. 5

    D. The District Court Decides *NASSCO*..................................................................... 7

    E. Matson Changes Its Demand ................................................................................... 7

    F. INA Denies Coverage To Matson............................................................................. 7

    G. Matson Further Amends Its Demand In Response To *NASSCO* ............................ 8

    H. INA Declaratory Judgment Action ......................................................................... 8

III. THE ARBITRATION CLAUSE IS NARROW IN SCOPE AND MATSON'S DEMAND IS NOT WITHIN THE SCOPE OF THE ARBITRATION CLAUSE............8

    A. Legal Standard ......................................................................................................... 8

    B. Matson's Petition To Compel Arbitration Must Be Denied ................................ 10

        1. The Arbitration Clause Does Not Contain Any Judicially Recognized Words Which Would Broaden The Scope Of The Arbitration Clause ................ 10

        2. The Cases Cited By Matson Actually Support INA's Position ................ 12

        3. Matson's Characterization Of Its Claim Does Not Change The Narrow Scope Of The Arbitration Clause ......................................................................... 13

        4. The Dispute Between Matson And INA Involves Whether The Excess Policy Covers Matson's Claims For Special Fund Assessments At All, Not What The "Annuity Value Or Value Of The Claim[s]" May Be ............................... 14

IV. CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*AIU Ins. Co. v. Superior Court*
    51 Cal.3d 807 (1990) ................................................................................................10

*Bank of the West v. Superior Court*
    2 Cal.4th 1254 (1992) ................................................................................................10

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*
    5 Cal.4th 854 (1993) ..................................................................................................10

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*
    68 Cal. App. 4th 445 (1998) ................................................................................. 13-14

*Comer v. Micor, Inc.*
    436 F.3d 1098 (9th Cir. 2006) .....................................................................................9

*Ellsworth v. U.S. Bank*
    No. C 12-02506 LB................................................................................................ 9-11

*Goodrich Cargo Sys. v. Aero Union Corp.*
    No. 06-06226 CRB, 2006 WL 3708065 (N.D. Cal. 2006) ..........................................9

*Ingle v. Circuit City Stores, Inc.*
    328 F.3d 1165 (9th Cir. 2003) .....................................................................................9

*John Wiley & Sons, Inc. v. Livingston*
    376 U.S. 543 (1964)....................................................................................................9

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*
    363 F.3d 1010 (9th Cir. 2004) .....................................................................................9

*Mediterranean v. Ssangyong*
    709 F.2d 1458 (9th Cir. 1983) ...................................................................................12

*Nat'l Steel & Shipbuilder Co. v. Century Indemnity Company*
    No. 12-cv-1147-MMA-MDD, 2013 WL 3989194 .....................................................1

*Palmer v. Truck Ins. Exch.*
    21 Cal.4th 1109 (1999) ..............................................................................................10

*Republic of Nicaragua v. Standard Fruit Company*
    937 F. 2d 469 (9th Cir. 1991) ....................................................................................11

*Rosen v. State Farm General Ins. Co.*
    30 Cal.4th 1070 (2003) ..............................................................................................10

*Simula, Inc. et al. v. Autoliv, Inc.*
   175 F.3d 716 (9th Cir. 1999) .................................................................................... 9, 11-12

*Sun Life Assurance Company of Canada v. Liberty Mutual Ins. Co.*
   No. 09 CV 2133 JM (CAB), 2009 U.S. Dist. LEXIS 114694 (S.D. Cal.) ............................. 11

*United Steelworkers v. Warrior & Gulf Navigation Co.*
   363 U.S. 574 (1960) ........................................................................................................ 9

*Zenger-Miller v. Training Team, GMBH*
   757 F. Supp. 1062 (N.D. Cal. 1991) .............................................................................. 12

*Zolezzi v. Dean Witter Reynolds, Inc.*
   789 F.2d 1447 (9th Cir. 1986) ....................................................................................... 13

**Statutes**

9 U.S.C. §§ 1 *et seq.* ............................................................................................................ 9

33 U.S.C. §§ 901 *et seq.* ............................................................................................... 2-3, 12

33 USC § 908(f) ............................................................................................................ 2-3, 7

33 USC § 944 ................................................................................................................... 2-3

Cal. Civ.Code § 1641 ........................................................................................................ 10

California Code of Civil Procedure §§ 1280 *et seq* ............................................................. 8

## I.      INTRODUCTION

In Petitioners' Matson Terminals, Inc. and Matson Navigation Company, Inc. (collectively "Matson") Petition to Compel Arbitration (the "Petition"), Matson asks this Court to interpret a clause[1] in an insurance policy endorsement which requires arbitration of disputes concerning the annuity value of a claim to apply more broadly to all disputes about whether a claim is covered under the policy. The plain wording of the Arbitration Clause and settled law in this Circuit establish that Matson's position is without merit.

The parties' dispute does not involve the determination of the "annuity value" of a claim. Instead, the dispute is whether administrative assessments that Matson paid for almost thirty years to the Longshore and Harbor Workers' Compensation Act's (the "LHWCA" or the "Act") Special Fund are covered as "loss" under an excess insurance policy (the "Excess Policy") issued by Insurance Company of North America ("INA")[2]. A recent Federal District Court decision supports INA's coverage determination that such administrative assessments are not covered by the Excess Policy. *Nat'l Steel & Shipbuilder Co. v. Century Indemnity Company*, No. 12-cv-1147-MMA-MDD, 2013 WL 3989194, at *12 (S.D. Cal. August 2, 2013) (hereinafter "*NASSCO*") (interpreting a policy with language nearly identical to the Excess Policy and holding that "there is no coverage for NASSCO's payment of [administrative fees]")[3]. A true and correct copy of the *NASSCO* decision is attached to the Declaration of Ray L. Wong as Exhibit B.

The Arbitration Clause at issue here is unique and unusually narrow in scope. An endorsement to the Excess Policy requires arbitration of disputes only "[i]n the event that INA and [Matson] cannot agree upon the Annuity Value or Value of the Claim." Excess Policy, Endorsement No. 6 at ¶ 3. The dispute here does not involve the "Annuity Value or Value of the Claim" but

---

[1] Hereinafter the "Arbitration Clause".

[2] INA Excess Workmen's Compensation and Employer's Liability Policy No. XWC 8388 which was issued to Matson subject to a $250,000 retained limit for each accident for the January 1, 1980 through January 1, 1981 policy period as renewed for the January 1, 1981 through January 1, 1982 policy period (collectively the "Excess Policy"). A true and correct copy of the Excess Policy is attached to the Declaration of Ray L. Wong as Exhibit A.

[3] As explained at page 9 of this Opposition INA has filed a declaratory judgment action.

concerns whether Matson has asserted a valid claim for coverage of the administrative assessments under the Excess Policy.

For all the reasons set forth herein Matson's Petition must be denied.

## II. STATEMENT OF THE ISSUE TO BE DECIDED

Whether, given the narrow scope of the Arbitration Clause in the Excess Policy, Matson's Petition to Compel Arbitration should be denied?

Suggested Answer: Yes

## III. FACTUAL BACKGROUND

### A. As A Self-Insured Employer, Matson Paid Assessments To The Act's Special Fund

Matson was an authorized self-insured employer under the Act and thus subject to administrative assessments by the Act's Special Fund. 33 U.S.C. §§ 901 *et seq*. The Act is a federal workers' compensation act providing wage-replacement benefits (often referred to as compensation or disability benefits) and medical benefits to certain workers engaged in maritime employment. 33 U.S.C. §§ 901-950. The Act requires self-insured employers such as Matson to pay all disability compensation and other benefits owed to an injured employee pursuant to the provisions of the Act.

The Act has a special provision limiting the employer's liability for permanent total disability where at the time of injury the employee had a pre-existing permanent partial disability. *See* Section 908(f) of the Act (hereinafter referred to as "Section 8(f)"). If the employer establishes entitlement to Section 8(f) relief, the employer is then liable for the first 104 weeks (i.e., 2 years) of permanent compensation benefits. *Id*. Thereafter, the employee is to be paid the remainder of his compensation benefits out of the Special Fund created in Section 944 of the LHWCA by the United States Department of Labor. *Id*.

Matson has admitted that it obtained relief under Section 8(f) of the Act with respect to each of the Claimants which form the basis of its Demand. *See* Letter from Philip L. Pillsbury, Jr. and Richard D. Shively to Kathleen McCreary, dated August 6, 2013 at pages 2 to 4 with Attachments, a true and correct copy of which is attached to the Declaration of Ray L. Wong as Exhibit C (the "Demand"). Thus, as to each Claimant, Matson's liability was limited to 104 weeks of payments.

2

Among other sources, the Special Fund[4] is funded by assessments imposed on insurers and annual assessments[5] imposed on all authorized self-insured employers such as Matson. Matson's Demand seeks reimbursement of those assessments from the Excess Policy.

### B.     Excess Policy Issued By INA To Matson

#### 1.     Insuring Agreement Of The Excess Policy

To cover a portion of its potential liability under the Act, Matson purchased and INA issued the Excess Policy. Declaration of Ray L. Wong at Exhibit A. The Excess Policy provides that Matson's retained limit is $250,000 for each accident. *Id.*, page 1 at Item 5; page 2 at II. Limit of Liability-Retained Limit. Stated another way, Matson bears the first $250,000 for each of the Claimants. Under the Excess Policy, INA covers only "excess loss" incurred by Matson, above the $250,000 Retained Limit, that Matson paid directly to a claimant in the form of compensation and other benefits:

> I.     Workers' Compensation Employers' Liability.
>
> INA hereby agrees to indemnify the Insured against excess loss as a result of injury (1) by accident occurring during the policy period or (2) by disease caused or aggravated by exposure of which the last day of the last exposure in the employment of the Insured to conditions causing the disease occurs during the policy period, subject to the limitations, condition and other terms of this policy which the Insured may sustain

---

[4] Section 944 establishes the Special Fund in the Treasury of the United States. The Fund has several purposes: (1) to pay for administrative costs of the LHWCA, including the costs of providing information and legal assistance to persons covered by the Act; (2) to pay for compensation and medical benefits to employees whose employers are insolvent; and (3) to pay a maintenance amount for employees undergoing vocational rehabilitation and to defray the expense of an employee's medical examinations ordered by the U.S. Department of Labor. In addition, both Section 944 and Section 908(f) are designed to discourage employers from discriminating against previously injured workers, whom the employers might otherwise refuse to hire, because of an increased workers' compensation risk, and to protect employers from liability risks associated with hiring a handicapped employee by spreading the liability risk throughout the industry.

[5] From 1972 to 1984 (the Excess Policy was in effect during part of this time period) the self-insured employer assessment was based on the ratio of each self-insured employer's total LHWCA compensation and medical benefit payments during the previous year to the total LHWCA compensation and medical payments by *all* self-insured employers and workers' compensation insurers during the previous year. *See* Smith, The Special Fund under the Longshore and Harbor Workers' Compensation Act. 11 Tul. Mar. L. J. 71, 82 (Spring, 1986)(the "1986 Article"). If a self-insured employer's LHWCA payments were one percent of total payments by all self-insured employers and insurers, the self-insured employer would be assessed one percent of the Special Fund's estimated expenses for the following year. After 1984, the assessment formula was changed. *See* 1986 Article at 83.

3

INA'S OPPOSITION TO MATSON'S PETITION
CASE #CV-13-557 LB                                                                                   DM1\4501832.1

because of:

>  (a) compensation and other benefits required of the Insured by the workers' compensation law; and . . .

*Id.*, page 2 at I.

The Excess Policy further provides that INA will only be liable for ultimate net loss in excess of the $250,000 Retained Limit, and only up to the limit of the Excess Policy, which is $5,000,000:

> INA's limit of liability under this policy shall be only for the *ultimate net loss* in excess of the Insured's retained limit stated in the declarations and then only for an amount not exceeding the policy limit stated in the declarations; provided that the retained limit and INA's limit of liability shall apply to:
>
> (a)   bodily injury by accident, including death resulting therefrom, sustained by one or more employees in each accident, or
>
> (b)   bodily injury by disease, including death resulting therefrom, sustained by each employee.
>
> The inclusion herein of more than one Insured shall not operate to increase the retained limit or INA's limit of liability.

*Id.*, page 2 at II. Limit of Liability – Retained Limit (emphasis added).

The term Ultimate Net Loss "means the sum actually paid in cash in the settlement or satisfaction of losses for which the insured is liable, either by adjudication or compromise with the written consent of INA, after making proper deductions for all recoveries, but shall exclude all salaries of employees and office expenses of the insured incurred in investigation, adjudication and litigation." *Id.*, page 3 at 4. Definitions (d) Ultimate Net Loss.

### 2.     The Revised Annuity Endorsement And Arbitration Clause

The Excess Policy contains a Revised Annuity Endorsement ("Endorsement No. 6"), subject to the terms and conditions of the Excess Policy. Endorsement 6 applies "only with respect to claims" under the Act involving permanent total disability or injury resulting in death covered by the Excess Policy. Endorsement No. 6 provides terms for an election of one of two options and for deriving an "Annuity Value or Value of the Claim." Consistent with the Insuring Agreement of the Excess Policy, Endorsement No. 6 defines the term "Annuity Value or Value of the Claim" as follows:

> For purposes of Option l and Option (2) above, *the Annuity Value of any claim arising from accident or disease to an individual shall be the annuity value of that total claim*, including but not limited to all compensation amounts paid and future, and medical benefits paid and future, whether such compensation amounts paid or medical benefits paid were based on permanent total disability status or otherwise, *based upon open market pricing of the annuity with a rate of escalation assumption agreed upon between INA and the insured*. In the event that open market annuities are not available for this purpose, the Value of the Claim shall be determined as the value of that total claim (unescalated and nondiscounted) as established by standard INA reserving practices. . . .

*Id.*, Endorsement No. 6 at ¶ 2 (emphasis added) (the "Value Definition").

Endorsement No. 6 also contains the narrow Arbitration Clause. The Arbitration Clause requires the parties to arbitrate only when they cannot agree on the "value" of a valid covered claim as follows:

> In the event that INA and the insured cannot agree upon the Annuity Value or Value of the Claim, the matter shall be submitted to binding arbitration in San Francisco, California.

*Id.*, Endorsement No. 6 at ¶ 3.

### C. Matson's First Demand

Apparently unaware of the *NASSCO* decision, on August 6, 2013 Matson presented a demand in the amount of $4,077,723.23 to INA for the amounts that Matson had paid in Special Fund Assessments since 1984. *See* Demand at 4. The Petition presently seeks a "reduced" amount of $3,516,629.55.

Matson's Demand to INA is based on the amount which Matson states it paid in Special Fund Assessments on account of thirteen former Matson employees (the "Claimants") with various dates of injury between January 18, 1980 through August 9, 1981, all of whom, either currently or at one time, received benefits from the Special Fund.[6] *See* Demand at 3-4. The Petition asserts a claim based on twelve of the thirteen former Matson employees. *See* Petition at paragraph 10.

---

[6] By letter dated August 30, 2013, Matson excluded from Matson's Demand amounts related to Special Fund Assessments paid on account of one of the thirteen claimants, Randolph Kim-seu. Although Matson never responded to INA's request for confirmation that Matson intends to withdraw in total any and all claims for indemnity related to this Claimant, Matson's Petition at paragraph 10 does not include a reference to Randolph Kim-seu. Accordingly, for purposes of this Opposition, INA will assume that Randolph Kim-seu's claim is no longer being pursed as part of the Petition and that there are twelve Claimants.

In the Demand, Matson reported that six of the Claimants are deceased with dates of death from March 15, 1998 to December 9, 2011. *See* Demand at 3. It appears, however, that two additional Claimants are deceased, bringing the total to eight of twelve [7]. With respect to the deceased Claimants, Matson's Demand indicates that "Matson is (so far) incurring no[8] further losses." *Id*.

In the Demand, Matson alleges that the payment of direct statutory benefits (medical benefits) paid by Matson to each Claimant, and the amount of Special Fund Assessments paid by Matson to the Special Fund "on account of each Claimant" should be aggregated such that Matson meets the $250,000 per Claimant Retained Limit in order to trigger INA's obligation to reimburse Matson for amounts paid over the Retained Limit. *See* Demand at 4.

Matson's Demand admits that unless there is coverage for Special Fund Assessments under the Excess Policy (which there is not), Matson has not satisfied the $250,000 Retained Limit for any of the Claimants based on the amount of direct statutory benefits Matson has paid to each Claimant.

As discussed hereinafter, there is no coverage for Special Fund Assessments and, therefore, there is no reimbursement obligation under the Excess Policy because the Retained Limit has not been satisfied. Thus, this dispute is about whether the claim for Special Fund Assessments is covered under the Excess Policy and not about the annuity value of a claim.

---

[7] The following Claimants were deceased as of the following dates: Catt (February 14, 2002); Duauchelle (July 29, 2004); Hyde (August 14, 2006); Musumeci (December 9, 2011); West (March 15, 1998). *See* Exhibit D and Attachments thereto to the Declaration of Ingrid S. Leverett In Support of Matson's Petition To Compel Arbitration. Based on the attachments to Exhibit A to the Declaration of Ingrid S. Leverett In Support of Matson's Petition To Compel Arbitration, it also appears that the following Claimants are deceased: Rudy Ceballos 8(f) assessments ended as of 2000; Harry Perry 8(f) assessments ended as of 2009; and Walter Stayart 8(f) assessments ended as of 2003.

[8] A review of the Demand and the attachments thereto establish that Matson, in fact, has ceased paying "direct statutory benefits" and "Special Fund Assessments" for those eight Claimants which it subsequently conceded are deceased. Notwithstanding the death of these eight Claimants, Matson demands and seeks in its *Petition* "Future Permanent Compensation Payments" (which clearly are re-characterized Special Fund Assessments paid by Matson which Matson attributes to each deceased Claimant) and in some cases Future Medical Benefits. *See* Exhibit D and Attachments thereto to the Declaration of Ingrid S. Leverett In Support of Matson's Petition To Compel Arbitration.

### D. The District Court Decides *NASSCO*

On August 2, 2013 the United States District Court decided *NASSCO*. In *NASSCO* the Court interpreted three excess indemnity workers' compensation policies containing an insuring agreement which is almost identical to the terms and conditions of the Excess Policy. The Court in *NASSCO* directly addressed whether Special Fund Assessments were covered and held that Special Fund Assessments are not covered because they do not qualify as ultimate net loss. The Court in *NASSCO* further held that Special Fund Assessments are not covered by the policy because they are not compensation or other benefits required by the Act. *NASSCO*, 2013 WL 3989194.

In summary, the *NASSCO* decision makes clear that Matson's Demand for reimbursement of Special Fund Assessments is not covered by the Excess Policy.

### E. Matson Changes Its Demand

In a second letter sent on August 30, 2013, and following industry publication of the *NASSCO* decision, Matson rephrased its Demand to focus instead on Endorsement No. 6 of the Excess Policy. *See* Letter from Philip L. Pillsbury, Jr. and Richard D. Shively to Kathleen McCreary, dated August 30, 2013, a true and correct copy of which is attached to the Declaration of Ray L. Wong as Exhibit D (the "Endorsement No. 6 Letter"). In the Endorsement No. 6 Letter, Matson also asserted that any "disputes concerning the proper valuation" of Matson's Demand must be submitted to binding arbitration in accordance with the Arbitration Clause contained in Endorsement No. 6.

### F. INA Denies Coverage To Matson

On October 7, 2013, INA advised Matson that the claims tendered in the Demand and the Endorsement No. 6 Letter were not covered under the Excess Policy, citing to *NASSCO*, 2013 WL 3989194 (S.D. Cal. 2013). A true and correct copy of the Declination Letter is attached to the Declaration of Ray L. Wong as Exhibit E (the "Declination Letter"). In the Declination Letter, INA explained that Section 8(f) Special Assessments are not covered by the Excess Policy and because Special Assessments qualified neither as "compensation" nor as "other benefits" under the Excess Policy, "Matson has not yet fully satisfied its $250,000 Retained Limit per Claimant through the payment of 'compensation or other benefits' as required by the Excess Policy."

7

Because there is no coverage under the Excess Policy, there is no issue of "value" and, accordingly, INA did not address the Annuity Value or Value of any claim in its Declination Letter.

### G.  Matson Further Amends Its Demand In Response To *NASSCO*

On November 25, 2013 Matson further amended its August 2013 demands. In an obvious attempt to avoid *NASSCO,* Matson "renamed" the Special Fund Assessments "Future Permanent Compensation Payments." A true and correct copy of the November 25, 2013 letter is attached to the Declaration of Ray L. Wong as Exhibit F (the "Arbitration Demand"). Notwithstanding the "name change" Matson still seeks reimbursement of amounts it paid for Special Fund Assessments for almost thirty years. As *NASSCO* squarely held, such amounts are not covered by the Excess Policy.

### H.  INA Declaratory Judgment Action

On December 5, 2013, INA filed a Complaint for Declaratory Judgment, which is pending in the Central District of California. *See Insurance Company of North American v. Matson Terminals, Inc., et al.*, Central District of California Case No. CV13-8958 SH (Document No. 1) ("INA Complaint"). A true and correct copy of the INA Complaint is attached to the Declaration of Ray L. Wong as Exhibit G. INA's position in the Complaint is the same as it outlined in its Declination Letter and "seeks a declaratory judgment that the excess workers' compensation insurance policy issued to Matson . . . who was . . . a self-insured employer under the [LHWCA] does not provide coverage for the Special Funds Administrative Assessments." INA Complaint at ¶ 1.

In addition, "the INA Complaint seeks a declaration … that Matson's Demand against INA is not within the scope of the Arbitration Clause contained in Endorsement No. 6 of the Excess Policy." INA Complaint at ¶ 57.

### III.  THE ARBITRATION CLAUSE IS NARROW IN SCOPE AND MATSON'S DEMAND IS NOT WITHIN THE SCOPE OF THE ARBITRATION CLAUSE

#### A.  Legal Standard

Pursuant to Endorsement 6, the parties agreed that "[a]rbitration shall be in accordance with the provisions of California Code of Civil Procedure sections 1280 *et seq*," the California Arbitration Act ("CAA"). (Endorsement 6). The CAA is coextensive for all relevant purposes with the Federal

Arbitration Act ("FAA"), which governs motions to compel arbitration in federal courts. 9 U.S.C. §§ 1 *et seq*. Under the FAA, a district court determines (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). *See also*, *Ellsworth v. U.S. Bank*, No. C 12-02506 LB, N.D. Cal., Document No. 32 (Beeler, J.)[9].

This Circuit has recognized that the existence of an agreement to arbitrate is a condition precedent to enforcement. Therefore, lack of agreement is a ground to refuse arbitration: "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *United Steelworkers*, 363 U.S. at 582). As such, "the FAA limits the court's discretion; the court must order the parties to proceed to arbitration only in accordance with the terms of their agreement." *Lifescan*, 363 F.3d at 1012 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). *See also Simula, Inc. et al. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (noting that "the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

---

[9] This Court previously discussed the rules of interpreting arbitration provisions in *Ellsworth v. U.S. Bank*, No. C 12-02506 LB, N.D. Cal., Document No. 32 (Beeler, J.):

> When a question arises as to whether "a particular party is bound by the arbitration agreement," "the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (emphasis in original; citation omitted). This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "Thus, a federal court must review the contract at issue to determine whether the parties have each agreed to submit a particular dispute to arbitration." *Goodrich Cargo Sys. v. Aero Union Corp.*, No. 06-06226 CRB, 2006 WL 3708065, at *2 (N.D. Cal. Dec. 14, 2006) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination . . . ."); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) ("The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the . . . agreement does in fact create such a duty.").

And it is settled law that a court cannot re-write the contract, but is obliged to enforce the agreement. *Rosen v. State Farm General Ins. Co.*, 30 Cal.4th 1070, 1073 (2003). A court is required to discern the parties' mutual intentions, relying upon the plain meaning of the terms and provisions, to which the parties agreed. *Id.* at 1074; *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 821 (1990) ("[T]he mutual intention of the parties at the time the contract is formed governs interpretation."). *See also, Ellsworth v. U.S. Bank*, No. C 12-02506 LB, N.D. Cal., Document No. 32 (Beeler, J.).

As applicable to the Excess Policy, "[w]hile insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992). Courts are to interpret and enforce the policy based upon the plain meaning of the terms to which the parties agreed. *Rosen*, 30 Cal.4th at 1073 (holding that courts err "[b]y failing to apply the plain, unambiguous language of the policy"). If the policy language "is clear and explicit, it governs." *Bank of the West*, 2 Cal.4th at 1264. Further, the terms in an insurance policy must be read in the context and in reference to the policy as a whole, with each clause helping to interpret the other. Cal. Civ.Code § 1641; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 867 (1993); *Palmer v. Truck Ins. Exch.*, 21 Cal.4th 1109, 1115 (1999).

The application of these principles to the authorities set forth hereinafter require the conclusion that the narrow scope of the Arbitration Clause does not permit the arbitration of the Demand asserted by Matson.

**B.    Matson's Petition To Compel Arbitration Must Be Denied**

    **1.    The Arbitration Clause Does Not Contain Any Judicially Recognized Words Which Would Broaden The Scope Of The Arbitration Clause**

The wording of the Arbitration Clause at issue is unique and limited to a narrow category of disagreements, *i.e.*, those regarding "the Annuity Value or Value" of particular covered claims. There are no words used which establish an intent to broaden the scope of the Arbitration Clause. The intent of the parties that the Arbitration Clause is narrow in scope is plainly established by the words that *were not used*.

1   The Arbitration Clause in the Excess Policy does not contain judicially recognized "broad" wording such as "all disputes arising in connection with this Agreement"[10], or "any and all disputes arising under the arrangements contemplated hereunder"[11], or "any dispute arising with respect to the reinsurance contracts"[12].

The Arbitration Clause relates to a specific dispute, and the parties did *not* agree that all coverage disputes under the Excess Policy would be arbitrated. To put the narrowness of the Arbitration Clause in the Excess Policy in perspective, the Arbitration Clause does not contain the words "arising out of", and even if those words were used, courts have interpreted the wording "arising out of" as "considerably more narrow in scope" than the language of the broad clauses referenced in the preceding paragraph. *Simula, Inc. et al. v. Autoliv, Inc,* 175 F. 3d 716, 720 n.3 (9th Cir. 1999) (citing *Tracer Research Corp. v. National Envt'l Serv. Co.*, 42 F.3d 1292 (9th Cir. 1994)). Thus, it is clear that the wording of the Arbitration Clause in the Excess Policy is much more narrow in scope than even the narrow clause considered by the Ninth Circuit in *Simula*.

INA's interpretation of the Arbitration Clause is consistent with this Court's analysis in *Ellsworth*. There this Court held that "[t]he language of an arbitration agreement establishes" its scope. *Ellsworth* (citing *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x, 630, 632 (9th Cir. 2011)). This Court looked "to the intent of the parties as manifested in their agreement" and found that the language of an arbitration provision pursuant to which the parties were to "arbitrate a dispute concerning your account" was not broad enough to find an agreement to delegate questions of a contract's arbitrability. *Id.* Similarly, here, the wording of the Arbitration Clause in the Excess Policy, which involves disputes regarding "the Annuity Value or Value of the Claim," is not broad enough that the Court could delegate to an arbitrator all disputes regarding the denial of coverage.

Thus, the Arbitration Clause is narrow in scope - none of the aforementioned recognized

---

[10] *Simula, Inc. et al. v. Autoliv, Inc,* 175 F. 3d 716, 720 (9th Cir. 1999).

[11] *Republic of Nicaragua v. Standard Fruit Company*, 937 F. 2d 469, 479 (9th Cir. 1991).

[12] *Sun Life Assurance Company of Canada v. Liberty Mutual Ins. Co.*, No. 09 CV 2133 JM (CAB), 2009 U.S. Dist. LEXIS 114694, at *4-5 (S.D. Cal. December 9, 2009).

"broad" wording was used by the parties to the Arbitration Clause[13]. For that reason alone Matson's Petition should be denied.

### 2. The Cases Cited By Matson Actually Support INA's Position

Several cases Matson cites to support its interpretation of the Arbitration Clause in the Excess Policy actually support INA's analysis.

In *Zenger-Miller v. Training Team, GMBH*, 757 F. Supp. 1062 (N.D. Cal. 1991), which Matson cites at pages 14-15 of its Petition, the defendant sought to dismiss Zenger-Miller's breach of contract, copyright and Lanham Act claims, among others, filed in the district court. The defendant sought a stay and to compel arbitration based on the following arbitration clause in their contract: "any controversy, or claim arising out of, or related to, amounts due and owing under this agreement shall be settled by arbitration." *Id.* at 1066. In the first instance, the arbitration clause in *Zenger-Miller* with its wording "any controversy or claim arising out of, or related to" is much broader in scope than the Arbitration Clause in the Excess Policy. Second, *Zenger-Miller* does not hold as stated by Matson at page 14 of the Petition "that controversies that 'related to amounts due and owing' necessarily includes 'all substantive issues that would affect plaintiffs damages' and renders these issues arbitrable"[14]. Matson's conclusion that the clause in *Zenger-Miller* is comparable to the Arbitration Clause in the Excess Policy is simply wrong. In fact, *Zenger-Mille*r relies on the holding in *Mediterranean v. Ssangyong*, 709 F.2d 1458, 1464 (9th Cir. 1983), where the Ninth Circuit held that the omission of the phrase "relating to" in the arbitration clause would reduce the scope of an arbitration agreement. *Zenger-Miller*, 757 F. Supp. at 1066. *Mediterranean v. Ssangyong* compels the conclusion that the Arbitration Clause is narrow in scope since the

---

[13] Nor could those words have been used in the Arbitration Clause in the Excess Policy since such broad clauses are interpreted to "embrace[s] every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Simula, Inc. et al. v. Autoliv, Inc,* 175 F.3d 716, 720 (9th Cir. 1999) (citing *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988)). Such a "broad" interpretation would not be permissible and would run contrary to the provisions of the Act. The parties' intent in providing for a narrow Arbitration Clause is consistent with the provisions of the Act: the statutory mechanism through which questions of compensability of injury are determined. 33 U.S.C. §§ 901 *et seq.*

[14] *Zenger-Miller* actually held that such a reading was implausible given the contract. 757 F. Supp. at 1066. Accordingly, the district court denied defendant's motion to stay the district court action.

Arbitration Clause omits the words "relating to" as well as all other words that courts rely upon in reaching a conclusion that an arbitration agreement is broad in scope.

Similarly, the broker-dealer cases Matson cites at pages 14-15 of its Petition are consistent with INA's position that the Arbitration Clause in the Excess Policy is narrow in scope. Thus, in *Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447 (9th Cir. 1986), the Ninth Circuit affirmed the district court which had referred defamation and false light invasion of privacy claims against Dean Witter to arbitration where the stock broker at the time of his employment agreed to two arbitration clauses containing the words "any controversy". Those arbitration clauses are broader in scope than the Arbitration Clause in the Excess Policy. Thus, the *Zolezzi* case and similar cases do not support Matson's attempt to provide an expansive interpretation to the Arbitration Clause in the Excess Policy.

### 3. Matson's Characterization Of Its Claim Does Not Change The Narrow Scope Of The Arbitration Clause

Matson suggests that by denying coverage, INA has valued Matson's claim at $0.00, and therefore this dispute is over the valuation of a claim. Under Matson's argument, all disputes about coverage denials would result in a $0.00 valuation and thus be subject to arbitration. If that had been the parties' intention, they would have stated that all coverage disputes under the Excess Policy would be arbitrated. The parties' present dispute does not relate to the value of a claim, but rather that the Excess Policy does not cover Matson's administrative assessments imposed as a cost of doing business as a self-insured employer by the Act. *See NASSCO* (and the cases cited therein).

The Arbitration Clause provides that "*[i]n the event that INA and the insured cannot agree upon the Annuity Value or Value of the Claim*, the matter shall be submitted to binding arbitration." Excess Policy, Endorsement No. 6 at ¶ 3. To interpret this provision in the manner Matson proposes would ignore its limitation to disputes regarding Annuity Value or Value of a claim and allow Matson to compel arbitration based on *any* denial of coverage or *any* denial that a Claimant's injury is compensable under the Act. The Court, however, may not re-write or read out those parts of the Arbitration Clause that may be inconvenient for Matson. *See City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith,* 68 Cal. App. 4th 445, 473 (1998) ("Courts must interpret contractual

language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless.") (citations omitted).

Moreover, the Excess Policy's Value Definition contained in the same Endorsement No. 6 as the Arbitration Clause makes clear that the Arbitration Provision is actually limited only to a subset of disputes regarding the "Annuity Value or Value of the Claim." That provision states that "the Annuity Value of any claim arising from accident or disease to an individual shall be the annuity value of that total claim, . . . based upon open market pricing of the annuity *with a rate of escalation assumption agreed upon between INA and the insured*." Value Definition (emphasis added). "Value of the Claim," on the other hand, "shall be determined as the value of that total claim (unescalated and nondiscounted) as established by standard INA reserving practices." *Id.* Unlike the method for determination of "Annuity Value," the method for determining "Value of the Claim" includes no requirement for agreement of the parties. As such, the Arbitration Clause actually applies only where the parties are unable to agree on the rate of escalation to be applied to open market pricing of an annuity to determine "Annuity Value" on future compensation obligations.

### 4. The Dispute Between Matson And INA Involves Whether The Excess Policy Covers Matson's Claims For Special Fund Assessments At All, Not What The "Annuity Value Or Value Of The Claim[s]" May Be

The dispute between Matson and INA does not involve the rate of escalation to be applied to open market pricing of an annuity to determine "Annuity Value." Nor, for that matter, does the dispute involve "standard INA reserving practices." The dispute does not fall within the scope of the Excess Policy's Arbitration Provision, and the Court must deny Matson's Petition.

INA denied Matson's demand because Matson has not asserted a valid claim for "loss" under the Excess Policy and therefore the Excess Policy provides no coverage. As *NASSCO* holds, in order for Matson to have suffered a "loss" under the Excess Policy, Matson must have paid "compensation and other benefits" to the Claimants as a result of Matson's adjudicated liability in regard to the injuries sustained by the Claimants. *NASSCO* holds that Special Fund Assessments do not arise from adjudicated liability; they arise post the issuance of the Excess Policy as a result of the 1984 formula change for Self Insured Assessments—which formula changes every year. *See discussion* at 3-4, fn. 5, *supra*. The Special Fund Assessments Matson has paid are not

"compensation and other benefits," but administrative assessments, and therefore are not "losses" under the Excess Policy. Thus, INA maintains that Matson has not yet reached the Retained Limit for any Claimant based on the amount of "compensation and other benefits" paid to each Claimant. Matson itself has admitted this in the Demand.

The issues in dispute do not involve the "Annuity Value or Value of the Claim" discussed in Endorsement No. 6, but rather this dispute focuses on whether Matson has asserted a valid claim for coverage under the Excess Policy in the first instance. Because the parties' controversy involves only insurance coverage for Matson's claims, it simply does not fall within the scope of the Arbitration Clause, and Matson's Petition must be denied.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Matson's Petition and allow the parties to proceed with litigation of the declaratory judgment action currently pending in the Central District of California. The Arbitration Clause at issue is narrow and limited to disputes over how to value an agreed covered claim. It does not apply to Matson's claim for coverage of administrative assessments.

Dated: February 27, 2014

**Duane Morris LLP**

By: */s/Ray L. Wong*
  Ray L. Wong
  Attorneys for Respondent
  INSURANCE COMPANY OF NORTH
  AMERICA

15