Philip L. Pillsbury, Jr. (SBN 72261)
Ingrid S. Leverett (SBN 148813)
PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor
San Francisco, CA 94111
Telephone: (415) 433-8000
Facsimile: (415) 433-4816
ppillsbury@pillsburylevinson.com
ileverett@pillsburylevinson.com

Attorneys for Petitioners
MATSON TERMINALS, INC. and
MATSON NAVIGATION COMPANY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| MATSON TERMINALS, INC. and MATSON NAVIGATION COMPANY, INC.<br><br>Petitioners,<br><br>v.<br><br>INSURANCE COMPANY OF NORTH AMERICA,<br><br>Respondent. | Case No. CV-13-5571-LB<br><br>**PETITONERS MATSON TERMINALS, INC. AND MATSON NAVIGATION COMPANY, INC.'S REPLY TO RESPONDENT INSURANCE COMPANY OF NORTH AMERICA'S OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION**<br><br>Date: March 20, 2014<br>Time: 9:30 a.m.<br>Courtroom: C, 15th Floor<br><br>Assigned for All Purposes to Magistrate Judge Laurel Beeler<br><br>Date Action Filed: 12/02/2013<br>Trial Date: None assigned |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................................................ 1

II. SUPPLEMENTAL FACTS ........................................................................................ 5

III. ARGUMENT ................................................................................................................ 6

    A. Endorsement #6 is the INA Policy's Mandatory and Comprehensive Provision Governing the Adjustment of, and Resolution of Disputes Regarding, PTD Claims Under LHWCA. ............................................................................. 6

        1. On the Face of the INA Policy, the Arbitration Provision in Endorsement #6 Was Intended to Govern All Disputes Regarding the Adjustment of All PTD Claims Under LHWCA. ......................................... 6

            a) Endorsement #6 is Comprehensive, Covering All LHWCA PTD Claims. ................................................................................................ 7

            b) Endorsement #6 is Mandatory, Requiring the Arbitration of All Disputes Concerning the Adjustment of LHWCA PTD Claims. .................. 8

        2. The Correspondence Memorializing the Negotiation of Endorsement #6 Confirms that the Parties Intended that All Disputes Concerning the Adjustment of LHWCA PTD Claims Must Be Arbitrated. ............................... 10

    B. No Particular Language—or "Judicially Recognized Words"—Are Required To Make An Arbitration Provision Broad In Scope. .............................. 11

    C. At a Minimum, the Parties' Divergent Characterizations of their Dispute Establishes Ambiguity Requiring Referral To Arbitration. ..................................... 12

IV. CONCLUSION .......................................................................................................... 15

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bixler v. Next Fin'l Group, Inc.*,
    858 F. Supp. 2d 1136 (D. Mon. 2012) .................................................................................. 14

*Gravillis v. Coldwell Banker Resid'l Brokerage Co.*,
    143 Cal. App. 4th 761 (2006) .......................................................................................... 4, 13

*Haynes v. Farmers Ins. Exchange*,
    32 Cal. 4th 1198 (2004) ............................................................................................. 2, 5, 13

*Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*,
    790 F.2d 727 (9th Cir. 1986) ............................................................................................... 1

*Marchese v. Shearson Hayden Stone, Inc.*,
    734 F.2d 414 (9th Cir.1984) .............................................................................................. 12

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52, 62 (1995) .................................................................................................. 4, 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................................................... 4, 13

*National Steel and Shipbuilding Company v. Century Indemnity Company*,
    2013 WL 3989194 (S.D. Cal. Aug. 2, 2013) ....................................................................... 1

*Republic of Nicaragua v. Standard Fruit Company*,
    937 F.2d 469 (9th Cir. 1991) ............................................................................................. 12

*Sacks v. Dean Witter Reynolds Inc.*,
    627 F. Supp. 377 (C.D. Cal. 1985) .................................................................................... 14

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ............................................................................................. 12

*Sun Life Assur. Co. of Canada v. Liberty Mut. Ins. Co.*,
    No. 9-cv-2133 JM (CAB), 2009 WL 4798881 (S.D. Cal. Dec. 9, 2009) ........................... 12

*Un. Food & Commer'l Workers Union v. Alpha Beta Co.*,
    736 F.2d 1371 (9th Cir.1984) .............................................................................................. 1

*Un. Steelworkers v. Am. Manuf. Co.*,
    363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) .......................................................... 1

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ........................................................ 13

*Volt Information Sciences, Inc., v. Board of Trustees of Leland Stanford Junior Univ.*,
 489 U.S. 468 (1989) ............................................................................................................ 4

*Zenger-Miller, Inc. v. Training Team, GmbH*,
 757 F. Supp. 1062 (N.D. Cal. 1991) ............................................................................ 13, 14

*Zolezzi v. Dean Witter Reynolds, Inc.*,
 789 F.2d 1447 (9th Cir. 1986) ......................................................................................... 14

**Statutes**

United States Longshoremen's and Harbor Workers' Compensation Act
 33 U.S.C. §901 et seq. ........................................................................................................ 7

 33 U.S.C. § 919(d) ............................................................................................................. 9

## I. INTRODUCTION[1]

INA's Opposition confirms that, as a matter of law, the parties' dispute must be resolved by arbitration.[2] INA has presented the Court with a characterization of that dispute that differs materially from Matson's. Both parties base their differing views on the terms of the INA Policy and the scope of its arbitration provision. Matson's interpretation of what the Policy requires under the circumstances present here—arbitration under Endorsement #6 to resolve the values of each of the PTD claims of the twelve Claimants—is, at a bare minimum, a reasonable one. The parties are required to arbitrate a dispute that, like the present one, is governed by a policy with an arbitration provision that arguably encompasses it.

All of INA's arguments are based on a false premise—that the INA Policy, like the one in *NASSCO*[3]—on which INA heavily relies (*see* Opposition at 1, 5, 7, 8, 13 and 14)—requires that PTD claims be valued in a way that considers only past losses already incurred by the insured. This traditional valuation method, which Endorsement #6 displaces, is backward-looking in that it (1) contemplates reimbursement of expenses already incurred, and (2) requires that the insured first meet its self-insured retention (here, $250,000) for each claimant.

---

[1] Shorthand references in this brief (e.g., "INA," "Policy," "LHWCA," "Claimant," "Endorsement #6," "PTD," "Special Fund," "Section 8(f)," etc. shall have the meanings given in Matson's Petition to Compel Arbitration and the supporting Memorandum of Points and Authorities, filed on December 2, 2013. Docket #1. "Matson" refers collectively to Matson Terminals, Inc. and Matson Navigation Company, Inc. "Opposition" refers to Respondent [INA]'s Opposition to [Matson's] Petition to Compel Arbitration," filed on February 27, 2014 (Docket #26). "Petition" or "Pet." refers to the Memorandum of Points and Authorities in support of Matson's Petition to Compel Arbitration, filed on December 2, 2013. Docket #1.

[2] The Court's role in this action is limited to deciding whether the parties must arbitrate their dispute—it does not encompass the merits of the dispute. "When faced with a petition to compel arbitration, a court's role is limited to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*, 790 F.2d 727, 731 (9th Cir. 1986) (quoting *Un. Food & Commer'l Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1374 (9th Cir.1984)) (quoting *Un. Steelworkers v. Am. Manuf. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)) (internal quotation marks omitted). The present action cannot reach the merits of the parties' dispute unless both: (1) the Court denies Matson's Amended Petition to Compel arbitration <u>and</u> (2) Matson brings a claim (or cross-claim) against INA, in this Court, for breach of contract.

[3] *National Steel and Shipbuilding Company v. Century Indemnity Company*, 2013 WL 3989194 (S.D. Cal. Aug. 2, 2013) (internal quotation marks omitted) ("*NASSCO*").

-1-
REPLY TO OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION     Case No. CV-13-5571-LB

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

INA mistakenly relies on the *NASSCO* decision to argue that Section 8(f) assessment payments cannot be counted as past losses for which INA must reimburse Matson under the Policy. The problem is that *NASSCO* involved nothing remotely like Endorsement #6, and Endorsement #6 is the jumping-off point for—and the endpoint of—the parties' dispute here.[4]

Endorsement #6 of the INA Policy is *sui generis*. INA and Matson actively negotiated it over the course of many months. The endorsement represents a sea change from the traditional manner in which PTD claims under LHWCA would otherwise be adjusted.[5] As INA admits, ""[t]he Arbitration Clause at issue here is unique . . . . " Opposition at 1, *see also* Opposition at 6 ("The wording of the Arbitration Clause at issue is unique . . . . "). With Endorsement #6, the INA Policy supplanted the traditional method of adjusting PTD claims under LHWCA that the court considered in *NASSCO*.

Unlike the policy provisions at issue in *NASSCO,* Endorsement #6 requires a non-traditional valuation that simply does not involve or consider Section 8(f) or the assessment payments that *NASSCO* addressed. Instead, Endorsement #6 requires that PTD claims under LHWCA be valued based on a prospective estimate of the stream of compensation payments each Claimant will receive over his lifetime. This estimate must be made "as of the time that compensable permanent total disability status has been finally established." Endorsement #6, section 2. It encompasses all compensation and medical benefits each claimant is expected to eventually receive, ignoring whether the source be Matson or the Special Fund. Specifically, the parties are to value each claim by establishing either (1) an annuity value or (2) a claim value that predicts future compensation and medical costs in a manner "established by standard

---

[4] INA advises the Court of its action against Matson for declaratory relief in the Central District of California, *Insurance Company of North America v. Matson Terminals, Inc., et al*., No. CV-13-8958-SJO (FFMx) (Opp. at 8) but neglects to inform the Court that currently pending in that action is Matson's Motion to Dismiss, Stay or Transfer the action on the grounds that (1) the present action is the first-filed (INA filed the Central District action on December 4, 2013), (2) venue in the Central District is improper, and (3) forum non conveniens factors favor transfer to the Northern District. Matson's motion is set for hearing before Judge James Otero on April 7, 2014.

[5] As a matter of well-settled law, insurance policy endorsements supersede any conflicting provisions in the body of the policy itself. *Haynes v. Farmers Ins. Exchange*, 32 Cal. 4th 1198, 1204 (2004) ("[I]f a conflict exists between the main body of the policy and an endorsement, the endorsement prevails.").

INA reserving practices" and adds that to costs already incurred. *Id.*[6] Thus by entering into Endorsement #6, the parties intentionally abandoned the traditional, reimbursement-based adjustment method at issue in *NASSCO* in favor of a new, predictive one.

Endorsement #6 is mandatory and comprehensively governs the adjustment of all PTD claims submitted to INA and any disputes between INA and Matson that may arise in that process. It includes an arbitration provision intended to resolve any disputes over annuity value / claim value that may result from the endorsement's new claim value-based method of adjusting PTD claims. Endorsement #6, section 3.

INA argues that the proper reading of Endorsement #6 and its arbitration provision is narrow and excludes the present dispute. Indeed, INA's interpretation of the INA Policy wholly ignores Endorsement #6, rendering it surplusage. In INA's view, Claimants' claims must be adjusted under the traditional, backward-looking method at issue in *NASSCO*— premised on reimbursing the insured only for expenses it has already incurred for each Claimant's compensation and statutory benefits. Under INA's reading of the INA Policy, Endorsement #6 would never apply, only a court could ever resolve disputes between the parties in adjusting PTD claims, and arbitration would never be appropriate. That view ignores the plain language of Endorsement #6 and the parties' intent in negotiating and entering into it.

Matson rejects INA's interpretation of the INA Policy and Endorsement #6 along with INA's mischaracterization of the parties' dispute. That dispute is <u>not</u> about whether special assessment payments under Section 8(f) are covered.[7] Rather, it requires the establishment of claim values under Endorsement #6 for all PTD claims under LHWCA, a process in which

---

[6] Under Endorsement #6, Matson's $250,000 self-insured retention is to be accounted for either by: (Option 1) Matson's paying $250,000 to INA, thereby transferring all liabilities under the claim to INA, or (Option 2) Matson's receiving from INA the annuity value less $250,000, thereby relieving INA of any future liabilities for that claim. Endorsement #6, section 1. Because Endorsement #6 accounts for Matson's self-insured retention as a part of its claim-valuation method, INA's argument that Matson has not satisfied its self-insured retention (Opposition at 6) not only fails, it misses the point.

[7] Thus INA erroneously states, at page 4 of its Opposition that "this dispute is about whether the claim for Special Fund Assessments is covered under the Excess Policy and not about the annuity value of a claim." Opp. At 6:16-17. INA also implies, erroneously, that the language of Endorsement #6 requires a threshold determination, under the body of the INA Policy, that claims of PTD or injury resulting in death are "covered by the Excess Policy." Opp. at 4:24-25. Endorsement #6 contains no language to this effect. *See also* discussion at 8:26-9:12.

INA admits it has refused to engage. *See* Opposition at 8:2 ("INA did not address the Annuity Value or Value of any claim in its Declination Letter.") Endorsement #6 requires that this dispute be resolved by means of arbitration. The *NASSCO* decision—along with the Special Fund and annual assessment payments under Section 8(f)—are factors relevant only to the adjustment of claims under the traditional, backward-looking, reimbursement-based method INA advocates, and that Matson and the INA Policy reject. Endorsement #6 supplanted that method with a new, predictive one that involves (indeed, permits) no consideration of Section 8(f) or annual assessment payments. The only issue is: what are the total compensation and medical payments each Claimant will eventually receive? Whether such payments are made directly by Matson, or by the Special Fund on Matson's behalf, simply does not arise.

The very fact of the parties' differing interpretations of Endorsement #6 and its arbitration provision—without more—establishes that the scope of the arbitration provision is ambiguous. As a matter of law, courts are to resolve in favor of arbitration any ambiguities concerning whether or not a particular question is arbitrable. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) ("due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor or arbitration") (quoting *Volt Information Sciences, Inc., v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989) (internal quotation marks omitted). *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration, whether the problem . . . is the construction of . . . contract language . . . or an allegation of waiver, delay or a like defense to arbitrability."); *Gravillis v. Coldwell Banker Resid'l Brokerage Co.*, 143 Cal. App. 4th 761, 771-72 (2006) ("[A]n order directing arbitration should be granted unless it may be said with positive assurance that the arbitration [provision] is not susceptible of an interpretation that covers the asserted dispute. . . . The burden is on the party opposing arbitration to show the agreement cannot be interpreted to apply to the dispute.") (emphasis added).

/ / /

## II.   SUPPLEMENTAL FACTS[8]

From approximately November 1979 through July or August of 1980, representatives of INA and Matson, respectively, actively engaged in negotiations that culminated in Endorsement #6 to the INA Policy, with both sides understanding that Endorsement #6 would require all PTD claims falling under LHWCA to be adjusted in a radically different way from the traditional, reimbursement-based adjustment method. *See* Supplemental Bodager Decl. and attached exhibits; *see*, in particular, Suppl. Bodager Decl. at ¶ 2, **Exh. J**.[9]

A review of this correspondence confirms that the purpose of INA's proposed endorsement was to arrive at a method that would allow the parties to assign a value to each PTD claim prospectively, as of the date that a claimant's PTD status was established, and to then promptly complete final adjustment of the claim without waiting for all losses to be actually incurred. *See* **Exhs. A-J**. The value established would be the market value of an annuity or the amount necessary to pay another company, normally a life company, to assume obligations for the claim until its closure. *See, e.g.*, **Exh. A**. INA's obligation was to pay Matson, up front (i.e., before all losses were actually incurred), the difference between Matson's retention and that value. *See, e.g.*, **Exhs. A**, **G**, **H**.

When finalized, the new endorsement was intended to displace the traditional, reimbursement-based method for adjusting PTD claims under LHWCA that otherwise would have been required under the body of INA's standard Excess Workmen's Compensation and Employers' Liability Policy in the absence of Endorsement #6.[10]  *See, e.g.*, **Exhs. A**, **C**, **D**, **J**. The concept of the annuity endorsement obligated INA to pay total losses in advance, on the

---

[8] The facts set forth below supplement those presented to the Court in Matson's Memorandum of Points and Authorities in Support of its Petition to Compel Arbitration and in the supporting declarations (of Barbara Bodager and of Ingrid Leverett), all filed on December 2, 2013. Docket #1, documents ## 1, 3 & 4. At the time it filed its Petition to Compel Arbitration (December 2, 2013), Matson was unaware of the documents attached as exhibits to the Supplemental Declaration of Barbara Bodager, learning of them only thereafter (on or about December 10, 2013). Supplemental Declaration of Barbara Bodager at ¶ 1.

[9] Hereafter, references to "**Exh.**" or "**Exhs.**" shall be to the designated exhibit(s) attached to the Supplemental Declaration of Barbara Bodager that supports and accompanies this brief.

[10] *See Haynes*, 32 Cal. 4th at 1204 ("[I]f a conflict exists between the main body of the policy and an endorsement, the endorsement prevails.").

basis of estimates of future losses, before actual total losses could have been known. *Id*.

The purpose of the new adjustment method that INA proposed in 1979 or 1980 when underwriting a workers' compensation policy for Matson was for INA and Matson to arrive at agreement on the value of a PTD claim under LHWCA <u>as of the time a claimant's PTD status was first established</u>. **Exh. A**. The new adjustment method INA proposed to Matson involved assigning each claim a prospective value based on estimates of future losses. This was to be done without considering—or even taking into account—the identity of the entity that might ultimately pay the benefits in question (i.e., Matson or the Section 8(f) Special Fund). *See, e.g.*, **Exhs. A**, **C**, **D**. Rather, the focus of the new adjustment method is simply determining total benefits the claimant could be expected to eventually collect based on his life expectancy. *Id*. In short, the question is how much will the claimant collect, not who will pay it. *Id*.

In May, June or July of 1980, Matson's attorney, Kelly Wooster, advised INA that Matson wanted to include an arbitration provision in the new annuity endorsement then under negotiation. **Exhs**. **D**, **E**, **G**, **H**. With immaterial changes, the language currently appearing in Endorsement #6 under the heading "3. Arbitration" is the arbitration provision Mr. Wooster and Matson drafted and proposed to INA in negotiating the endorsement that would thenceforth govern the adjustment of all PTD claims under LHWCA. *Compare* **Exh. H** with Endorsement #6, section 3.[11]

### III.   ARGUMENT

**A.   Endorsement #6 is the INA Policy's Mandatory and Comprehensive and Mandatory Provision Governing the Adjustment of, and Resolution of Disputes Regarding, PTD Claims Under LHWCA.**

**1.   <u>On the Face of the INA Policy, the Arbitration Provision in Endorsement #6 Was Intended to Govern All Disputes Regarding the Adjustment of All PTD Claims Under LHWCA.</u>**

On its face, the INA Policy, including Endorsement #6, establishes that the prospective adjustment method Endorsement #6 prescribes is to be mandatory and comprehensive and that any all disputes arising in adjusting LHWCA PTD claims are to be resolved through binding

---

[11] References to "Endorsement #6" and "Endorsement #2" are all found at **Exhibit A** to the Declaration of Barbara Bodager filed with Matson's original Petition to Compel Arbitration.

-6-
REPLY TO OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION     Case No. CV-13-5571-LB

arbitration. Because the new adjustment method operates prospectively, establishing claim value by estimating total compensation and medical benefits a claimant could be expected to receive over his entire lifetime, all disputes arising out of that process will ultimately amount to a disagreement—as in this case—about the value of the claim. Under Endorsement #6, all such disputes must be arbitrated. That outcome is precisely what Matson is seeking.

### a) Endorsement #6 is Comprehensive, Covering All LHWCA PTD Claims.

The relevant language is broad in scope, encompassing all PTD claims under LHWCA. Endorsement #6 begins by stating that it "delete[s] in its entirety and replace[s]" the INA Policy's "Annuity Endorsement number 2."[12] That endorsement, entitled "Annuity Endorsement" (hereafter "Endorsement #2"), amended section II of the INA Policy's insuring agreement. Endorsement #2. Endorsement #2 set forth a prospective adjustment method that is similar in most respects to the one embodied in Endorsement #6, i.e., a forward-looking valuation of each PTD claim, as of the time PTD status is first established. *Id*. In addition to addressing PTD claims, Endorsement #2 also addressed aspects of other kinds of claims not addressed in Endorsement #6, i.e., the manner in which the INA Policy's self-insured retention and policy limits were to be applied to non-PTD claims. *Id*.[13]

In deleting Endorsement #2 and replacing it in its entirety, Endorsement #6 clarified that it (unlike Endorsement #2) applied <u>only</u> to PTD claims—that is, Endorsement #6 (unlike Endorsement #2) does not also encompass non-PTD claims. *Id*. (Endorsement #6). Thus Endorsement #6 begins:

> It is agreed that the following provisions apply only with respect to claims under the United States Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. §901 et seq.) involving permanent total disability or death (except as provided in paragraph 4, "<u>Multiple Claims Arising in One Accident</u>," below).

---

[12] Endorsement #2 was never an agreed part of the Policy. It served as a placeholder, when the Policy was first issued, that the parties intended to replace with a revised annuity endorsement as soon as they had agreed to specific language. Suppl. Bodager Decl. **Exhs C** and **E**, et seq.
[13] Both Endorsement #2 and Endorsement #6 address claims for multiple injuries or deaths (not substantively relevant in this action).

-7-
REPLY TO OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION    Case No. CV-13-5571-LB

1  In other words, the qualifier "only" in Endorsement #6 in no way limits its scope concerning

2  PTD claims. On the contrary, Endorsement #6 completely occupies the field and prescribes

3  the sole method by which INA and Matson agreed to adjust <u>all</u> PTD claims that Matson may

4  present to INA under the INA Policy.

### b) Endorsement #6 is Mandatory, Requiring the Arbitration of All Disputes Concerning the Adjustment of LHWCA PTD Claims.

In addition to encompassing all LHWCA PTD claims, the language of Endorsement #6 is mandatory, leaving open no other method for adjusting such claims (i.e., INA cannot simply revert to a traditional adjustment process, as if Endorsement #6 did not exist). Thus Endorsement #6 instructs, at section 1, that "[t]he insured . . . <u>shall</u> elect either Option (1) or Option (2), below" (emphasis added) (prescribing the two alternative methods by which the parties are to assign responsibility for continued claim payment responsibilities on each claim upon determining its value). Section 2 of Endorsement #6 directs the method by which claim value for PTD claims is to be established, i.e. that it "<u>shall</u> be the annuity value of that total claim" ("Annuity Value") or, if "open market annuities are not available," that claim value "<u>shall</u> be determined as the value of that total claim (unescalated and nondiscounted) as established by standard INA reserving practices ("Value of the Claim").[14] (Emphases added.) Endorsement #6 continues to employ such mandatory language throughout its section 4 ("Multiple Claims Arising in One Accident") (not substantively at issue in this action), e.g.: "the following rules govern application of the single retained limit applicable to each such accident," "all other claims . . . <u>shall</u> be the sole responsibility of INA," "INA <u>shall</u> reimburse the insured," "the insured . . . <u>shall</u> pay to INA the amount," "all such claims <u>shall</u> be the sole responsibility of INA," "the Annuity Value or Value of the Claim <u>shall</u> be applied to exhaust the retained limit," "INA <u>will</u> pay the difference to the insured," "the time within the insured <u>shall</u> elect . . . <u>shall</u> be no later than." (Emphases added.)

Further underscoring the mandatory character of Endorsement #6 in adjusting all

---

[14] Further, in the event that a PTD claimant should die before claim value is established, "a new '<u>Election of Options</u>' period <u>shall</u> commence." *Id*. (emphasis of "shall" added).

REPLY TO OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION    Case No. CV-13-5571-LB

LHWCA PTD claims is the fact that one of the endorsement's triggers is the occurrence of "the final establishment of compensable permanent total disability or death status" under LHWCA. Endorsement #6, section 1. The only way that PTD or death status can be established under LHWCA is via an adjudication issued by an administrative law judge of the U.S. Department of Labor. 33 U.S.C. § 919(d). In other words, Endorsement #6 purposefully and explicitly accepts an adjudication of a claimant's PTD status as establishing INA's liability to cover the PTD claim in question. Practically speaking, relying on an official adjudication of a claimant's PTD status makes sense, as that adjudication is the product of an adversarial proceeding that is designed to protect against fraudulent claims. Matson has alleged (and INA has not disputed) that each and every one of the claims at issue in its Petition to Compel arbitration was the subject of an ALJ's adjudication of the Claimant's PTD status under LHWCA. With INA's liability thus already established, the only open question for Endorsement #6 to address is claim value.

Thus the arbitration provision in Endorsement #6—section 3—requires: "In the event INA and the insured cannot agree upon the Annuity Value or Value of the Claim, the matter shall be submitted to binding arbitration in San Francisco, California." (Emphasis added.) Put simply, if INA and Matson disagree on claim value—ultimately, the only subject matter open to potential dispute for LHWCA PTD claims under Endorsement #6's new prospective valuation method—then the issue must be arbitrated.

INA argues that the scope of the Policy's arbitration provision is limited solely to disputes over the rate of escalation to be used in calculating those values. Opp. at 14. INA bases this conclusion on a tortured inference it draws from the statement in section 2 of Endorsement #6 that Annuity Value shall include "a rate of escalation assumption agreed upon between INA and the insured." INA apparently seizes upon the word "agreed" as somehow evidencing an intent to limit the scope of the arbitration provision in the next section of Endorsement #6 (i.e., section 3, i.e., the arbitration provision). INA's reasoning is never explained, nor is it apparent.

But the arbitration provision in Endorsement #6, on its face, confirms that its scope is

-9-
REPLY TO OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION    Case No. CV-13-5571-LB

far broader than covering only this lone element (escalation rate) of Annuity Value (which, itself, is one of two alternate methods designated in Endorsement #6 for establishing claim value). Section 3 provides, in relevant part: "[i]n the event that INA and the insured cannot agree upon the Annuity Value or Value of the Claim, the matter shall be submitted to binding arbitration in San Francisco, California." Endorsement #6, section 3. The escalation rate factor relates only to Annuity Value, not to Value of the Claim (which is unescalated). Nevertheless, the arbitration provision encompasses both methods of claim valuation, i.e., Annuity Value <u>and</u> Value of the Claim. Thus the arbitration provision's scope must be broader than INA contends. Simply put, arbitration is mandatory for <u>all</u> disagreements that ultimately result in disparate claim valuations. That is what we have here.

**2. <u>The Correspondence Memorializing the Negotiation of Endorsement #6 Confirms that the Parties Intended that All Disputes Concerning the Adjustment of LHWCA PTD Claims Must Be Arbitrated.</u>**

While Endorsement #6 is clear on its face—and prevails over any arguably conflicting provisions in the body of the INA Policy—the correspondence that memorializes the parties' negotiation of Endorsement #6 confirms that the arbitration provision was intended to be read broadly to encompass any and all disputes that could arise in the course of adjusting PTD claims under LHWCA. Because the determination of claim value is the entire focus of Endorsement #6's new, forward-looking PTD claims adjustment method, the language of section 3 is phrased in terms of disagreements as to "Annuity Value or Value of the Claim."

This phrasing is tailored to the terms and purpose of Endorsement #6 and its new PTD claims adjustment method. The prospective nature of the new method for adjusting LHWCA PTD claims (based on estimated future losses rather than actual past losses) eliminated the disputes that typically arise with a traditional, retrospective method of adjusting workers' compensation claims. Specifically, there is no need under Endorsement #6 to worry about whether Matson or the Special Fund makes all or some compensation payments to a claimant. The only issue is how much compensation the claimant will receive in total. Endorsement #6 <u>does not contemplate INA's reimbursing the insured for total past compensation</u>. Instead, the only issue is establishing a predictive, total claim value as of the time PTD status was first

-10-
REPLY TO OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION  Case No. CV-13-5571-LB

established, then subtracting the retention and leaving INA to pay Matson the difference all at once. Thus the only disputes ultimately possible under section 3 are as to claim value, and all such disputes must be arbitrated.[15]

The correspondence confirms what Endorsement #6 says on its face: all LHWCA PTD claims that Matson may submit to INA must be finally adjusted all at once, on the basis of estimated future losses, and any resultant disputes must be arbitrated.

**B. No Particular Language—or "Judicially Recognized Words"—Are Required To Make An Arbitration Provision Broad In Scope.**

To support its argument that the arbitration provision of Endorsement #6 does not encompass the parties' dispute, INA contends erroneously that only particular language or wording (e.g., "all disputes arising in connection with," or "any and all disputes arising under," or "any dispute arising with respect to") could have given the Endorsement #6 arbitration provision a sufficiently broad scope. Opp. at 10-12.

No statutory or case authority prescribes any particular language to render an arbitration provision "broad" in scope. Moreover, INA's argument ignores the nature of the present dispute—i.e., a dispute over the adjustment of LHWCA PTD claims, which under Endorsement #6, is a disagreement about the amounts INA is obligated to pay Matson. Because the dispute is about claim value, it must be arbitrated. Section 3 of Endorsement #6 is amply broad, as it stands, to require the arbitration of this dispute; the dispute arises under Endorsement #6 and concerns claim value, i.e., the Annuity Value or Value of the Claim. The arbitration provision of Endorsement #6 instructs:

> 3. <u>Arbitration</u>
> In the event that INA and the insured cannot agree upon the Annuity Value or Value of the Claim, the matter shall be submitted to binding arbitration in San Francisco, California.

---

[15] Although obvious from the plain language of the arbitration provision (Endorsement #6, section 3) that it encompasses any and all disputes regarding adjustment of LHWCA PTD claims, for the sake of clarity the correspondence attached to the Supplemental Declaration of Barbara Bodager underscores that section 3 is in no way limited to disputes concerning the escalation rate to be used in calculating claim values. See Suppl. Bodager Decl. **Exh. D**.

-11-
REPLY TO OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION    Case No. CV-13-5571-LB

1    As Matson has explained, the parties dispute claim value under Endorsement #6. That
2 dispute must be arbitrated. No broader language than what section 3 already contains is
3 necessary; a more broadly-worded arbitration provision could add nothing to the provision's
4 mandate that the present dispute must be arbitrated.[16]

### C. At a Minimum, the Parties' Divergent Characterizations of their Dispute Establishes Ambiguity Requiring Referral To Arbitration.

Even if the Court were to be inclined to entertain INA's argument that the parties' dispute does not fall under Endorsement #6, the most that contention would accomplish would be to establish ambiguity as to the scope of arbitrability, which, as a matter of law, must be resolved in favor of arbitration. *Mastrobuono*, 514 U.S. at 62 ("ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor or arbitration"). The position Matson has articulated for arbitrability is, at the very least, reasonable. The parties' differing policy interpretations on this point do nothing more than to establish ambiguity, requiring the matter to be arbitrated. "We ordinarily will not except a controversy from coverage of a valid arbitration clause 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir.1984), citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d

---

[16] The cases INA cites to support its argument that section 3 of Endorsement #6 is prohibitively narrow do not help INA. None of these cases supports the proposition that any particular language is required to render an arbitration provision broad in scope. The issue presented in *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) was whether arbitration provisions in agreements between the parties covered tort claims (for antitrust, Lanham Act and other tort violations) that the plaintiff had brought against the defendant; the court held that the arbitration clauses covered the tort claims. *Id*. at 723-25. Given that the court resolved in favor of arbitration claims that were not even contractual in nature, *Simula* actually supports Matson's position. The holding in *Republic of Nicaragua v. Standard Fruit Company*, 937 F.2d 469, 479 (9th Cir. 1991) expressly resolved doubts about the scope of an arbitration provision in favor or arbitrability. *Id*. at 478-479 ("the clear weight of authority holds that the most minimal indication of the parties' intent to arbitrate must be given full effect"). Finally, the court in *Sun Life Assur. Co. of Canada v. Liberty Mut. Ins. Co.*, No. 9-cv-2133 JM (CAB), 2009 WL 4798881 (S.D. Cal. Dec. 9, 2009) refused to "determine substantive rights and liabilities of the parties" that they had agreed to arbitrate, even where, arguably, the contracts containing the arbitration provisions had terminated, finding that whether the contracts had terminated was a question for the arbitrator. *Id*. at **2-3.

REPLY TO OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION    Case No. CV-13-5571-LB

1409 (1960).[17] Thus INA's argument that the lack of agreement to arbitrate defeats referral of a matter to arbitration (Opposition at 8-10) misses the point. Here, the parties did agree to arbitrate all disputes about the value of PTD claims, and that is just what Matson has presented to the Court. At a bare minimum, Matson has demonstrated that the arbitration provision "is . . . susceptible of an interpretation that covers the [parties'] dispute," requiring arbitration.[18]

INA characterizes the dispute as a disagreement as to whether or not Matson has asserted a valid claim for "loss" even though, on its face, Endorsement #6 expressly covers the claims in question, and it does not require the policy's $250,000 retention to be exhausted before INA must pay. As previously explained, conflicts between the body of an insurance policy and an endorsement are resolved in favor of the endorsement. *Haynes*, 32 Cal. 4th at 1204 ("[I]f a conflict exists between the main body of the policy and an endorsement, the endorsement prevails."). INA's argument reads Endorsement #6 out of the INA Policy entirely. But even if the Court nevertheless were somehow to find reasonable INA's interpretation of the Policy as requiring a showing of an actual (and covered) "loss," the parties' past dispute would still have to be arbitrated because, whatever the merit (or lack thereof) of INA's position, Matson's well-supported contrary interpretation of the Policy would remain at least equally reasonable.

The decision in *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1067 (N.D. Cal. 1991) illustrates this principle well. Contrary to what INA tells the Court, Matson did not mischaracterize (Opposition at 12 and n.14) the holding in *Zenger-Miller*. As Matson explained, *Zenger-Miller* involved a contract with both (1) an arbitration provision and (2) a

---

[17] *See also Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration"); *Gravillis,* 143 Cal. App. 4th at 771-72 ("[A]n order directing arbitration should be granted unless it may be said with positive assurance that the arbitration [provision] is not susceptible of an interpretation that covers the asserted dispute. . . . The burden is on the party opposing arbitration to show the agreement cannot be interpreted to apply to the dispute.") (emphasis added).
[18] Matson believes the scope of arbitrability here is not ambiguous: Endorsement #6 requires that the parties' dispute be arbitrated. But even if the Court were to doubt this conclusion, the matter would still have to be arbitrated because Matson's interpretation of the INA Policy (including Endorsement #6) is reasonable, giving rise at least to an ambiguity that would have to be resolved in favor of arbitration.

-13-
REPLY TO OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION   Case No. CV-13-5571-LB

forum selection clause. Pet. at 14 n.6. Substantive issues (i.e., interpretation, breach and enforcement) were to be resolved, under the forum selection clause, by federal or state courts in California. *Id*. The arbitration clause, in contrast, covered controversies arising out of / relating to "amounts due and owing." *Zenger-Miller*, 757 F. Supp. at 1066-67. The relevant dispute involved substantive matters. *Id*. at 1066. The court stated:

> One area of slight ambiguity remains. Since plaintiff is suing in part for money damages, <u>the resolution of any substantive issue (e.g., interpretation, breach) will necessarily affect the damages award or, said another way, will 'relate to amounts due and owing.'</u> Since the arbitration clause covers all controversies 'relating to amounts due and owing,' <u>all substantive issues that would affect plaintiff's damages would be arbitrable under this reading of the clause</u>.

*Id*. at 1067 (emphasis added). As Matson pointed out, the court found that the forum selection clause (absent here) governed the dispute, requiring litigation in a court, because that clause resolved the ambiguity <u>that otherwise would have required referral to arbitration</u>. Pet. at 14 n.6 (emphasis added). Absent the forum selection clause, substantive disputes would have been arbitrable because they concerned "amounts due and owing." *See* 757 F. Supp. at 1067. Precisely the same is true here under the INA policy. As Matson further explained, the INA Policy, unlike the contract in *Zenger-Miller*, contains only one dispute resolution provision: the arbitration provision (i.e., there is no forum selection clause here). Pet. at 14 n.6. Thus under *Zenger-Miller*, Endorsement #6 should be read to require arbitration of all claim value-related disputes, including the *NASSCO*-related issues INA has raised to support its conclusion that the claims have no value at all.[19]

---

[19] In the other cases Matson cites at pages 14 and 15 of its Opposition, courts resolve in favor of arbitration doubts about the scope of arbitrability. *See Zolezzi v. Dean Witter Reynolds, Inc*., 789 F.2d 1447, 1450-51 (9th Cir. 1986); *Bixler v. Next Fin'l Group, Inc*., 858 F. Supp. 2d 1136, 1149 (D. Mon. 2012); *Sacks v. Dean Witter Reynolds Inc*., 627 F. Supp. 377, 378 (C.D. Cal. 1985). Whether or not the arbitration provisions at issue in these cases were "broader in scope" (Opposition at 13) than Endorsement #6, section 3 begs the question before the Court. As Matson has argued (*see* section A, above), section 3 is plainly broad enough to encompass the dispute at issue.

-14-
REPLY TO OPPOSITION TO AMENDED PETITION TO COMPEL ARBITRATION     Case No. CV-13-5571-LB

## IV. CONCLUSION

The court should determine that Matson's claims fall squarely under Endorsement #6 of the INA Policy, which requires all disputes over the value of LHWCA PTD claims to be arbitrated. Matson has presented precisely such claims to INA, and the parties have wildly divergent views of the claims' value. At a minimum, the Court should find that the INA Policy, and in particular Endorsement #6, is at least ambiguous regarding the scope of arbitrability. In either event, the Court must refer the parties' dispute to arbitration.

Dated: March 6, 2014　　　　　　　　　　PILLSBURY & LEVINSON, LLP

By: /s/ *Ingrid S. Leverett*
Philip L. Pillsbury, Jr.
Ingrid S. Leverett

Attorneys for Petitioners
MATSON TERMINALS, INC. and
MATSON NAVIGATION COMPANY, INC.