1

2

3

4

5

6

7

8

9

10

# UNITED STATES  DISTRICT COURT

## Northern District of California

San Francisco Division

11

12

13

14

15

16

MATSON TERMINALS, INC., et al.,

            Plaintiffs,

    v.

INSURANCE COMPANY OF NORTH AMERICA,

            Defendant.

_____/

No. C 13-05571 LB

**ORDER DENYING MATSON'S PETITION TO COMPEL ARBITRATION**

[Re: ECF No. 22]

17

## INTRODUCTION

18

19

20

21

22

23

24

Petitioners Matson Terminals, Inc. and Matson Navigation Co. (collectively, "Matson") ask the court the compel Respondent Insurance Company of North America ("INA") to arbitrate the parties' current dispute regarding Matson's claims under an insurance policy.  Matson argues that the policy's arbitration agreement requires the dispute to be arbitrated, while INA argues that it does not.  The court held a hearing on the matter on March 20, 2014.  Upon consideration of the arbitration agreement, the arguments of counsel in their papers and at the hearing, and the applicable legal authority, the court **DENIES** Matson's petition.

25

## STATEMENT

26

Matson is an employer whose employees are, or at least were, subject to the federal Longshore

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

and Harbor Workers' Compensation Act ("LHCWA").  *See* Amended Petition, ECF No. 22 ¶ 7.[1]  In

1980 INA issued an "Excess Workmen's Compensation and Employers' Liability Policy" (the

"Policy") to Matson.[2]  The Policy was effective from January 1, 1980 to January 1, 1982, and

provides that Matson's retained limit is $250,000 for each accident.  Under the Excess Policy, INA

covers Matson's "excess loss" above the $250,000 retained limit.

Crucial to the parties' dispute and Matson's petition is Endorsement # 6, which relates to claims

involving permanent total disability ("PTD") or death.  It states in relevant part:

> It is agreed that Annuity Endorsement number 2 is deleted in its entirety and replaced by the following:
>
> It is agreed that the following provisions apply only with respect to claims under the United Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 et. seq.) involving permanent total disability or death (except as provided in paragraph 4, "Multiple Claims Arising in One Accident," below).
>
> 1. Election of Options
>
> The insured within twelve months from the final establishment of compensable permanent total disability or death status, or within ninety (90) days of the final determination communicated to the insured of the Annuity Value or Value of the Claim, whichever is later, shall elect either Option (1) or Option (2) below:
>
> Option (1): Pay INA $250,000.00 less the amount the insured has paid to date against the claim, thereby transferring all liabilities on the claim up to the policy limit to INA; or
>
> Option (2): Receive from INA the Annuity Value or Value of the Claim less $250,000.00, plus any amounts paid by the insured in excess of $250,000.00 but not reimbursed by INA, but not to exceed the policy limit, thereby relieving INA of all future liabilities under the policy as respects that claim.
>
> 2. Annuity Value or Value of the Claim
>
> For purposes of Option (1) and Option (2) above, the Annuity Value of any claim arising from accident or disease to an individual shall be the annuity value of that total claim, including but not limited to all compensation amounts paid and future, and medical benefits paid and future, whether such compensation amounts paid or medical benefits paid were based on permanent total disability status or otherwise, based upon open market pricing of the annuity with a rate of escalation assumption agreed upon between INA and the insured.  In the event that open market annuities are not available for this purpose, the Value of the Claim shall be determined as the value of that total claim (unescalated and nondiscounted) as established by standard

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

[2] Both Matson Terminals, Inc. and Matson Navigation Co. were signatories to the Policy.

UNITED STATES DISTRICT COURT
For the Northern District of California

INA reserving practices.  Either the Annuity Value or Value of the Claim will be established as of the time that compensable permanent total disability status has been finally established, or compensable status of a death claim has been finally established.  In the event that a claimant established as totally and permanently disable should die before an election is made between Options (1) and (2) and the death is compensable, then the Annuity Value or Value of the Claim shall be re-established as a death claim and a new "Election of Options" period shall commence.

### 3. Arbitration

**In the event that INA and the insured cannot agree upon the Annuity Value or Value of the Claim, the matter shall be submitted to binding arbitration in San Francisco, California.**  The parties shall attempt to agree upon a single neutral arbitrator and if they so agree, the arbitration shall be conducted before that single neutral arbitrator.  If the parties cannot agree upon a single neutral arbitrator, the arbitration shall be conducted before three arbitrators, of which each party shall select one, and the third, a neutral arbitrator, shall be selected by the two arbitrators selected by the parties.  If there are three arbitrators, the decision of two of them shall be binding.  Arbitration shall be in accordance with the provisions of California Code of Civil Procedure sections 1280 et seq., and the provisions of California Code of Civil Procedure section 1280.5 are specifically incorporated herein.

Amended Petition, Ex. A, ECF No. 22-1 at 16-18 (underlining in original; bolding added; footnotes omitted).  As seen above, Section 2 of Endorsement # 6 sets forth the procedures to determining the "Annuity Value" or "Value of the Claim."  Section 3 is the arbitration agreement.  It simply states, "In the event that INA and the insured cannot agree upon the Annuity Value or Value of the Claim, the matter shall be submitted to binding arbitration in San Francisco, California."

Recently, Matson has submitted to INA claims based on the disabilities of former Matson employees Homer Catt, Rudy Ceballos, Joe Comparsi, Benjamin Duvauchelle, Hyam Ganish, Norman E. Hutchins, Lyle Hyde, Alfred Musumeci, Harry Perry, Henry Randolph, Walter E. Stayart and Elijah West (the "Claimants").  *Id.* ¶ 11.  The Claimants were Matson employees who suffered injuries—during the Policy period, while working for Matson—that left each individual permanently and totally disabled.  *Id.*  According to Matson, it was ordered to pay, has paid, and continues to pay statutory compensation and medical benefits on behalf of the Claimants from the dates of their disabling injuries through the present (except in the case of those claimants who have died).  *Id.*  It also says that some of the benefit payments it made on behalf of the Claimants were made through assessment payments that funded a trust fund established under the LHWCA (the "Special Fund").  *Id.* ¶ 12.  The Special Fund has made direct payments of compensation benefits to each of the

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Claimants, discharging Matson's legal liability for providing such benefits.  *Id.*  In return, Matson

2    has been obligated to fund—through annual assessment payments—more than half of the Special

3    Fund's payments to the Claimants.  *Id.*

4        INA denied Matson's claims as falling outside of the Policy's coverage, arguing that Special

5    Fund assessments are not covered because they do not qualify as ultimate net loss.  Leverett

6    Declaration, Ex. C, ECF No. 3-3 (October 3, 2013 Letter of Ray Wong).  Matson has interpreted

7    INA's denial as being an assertion that the claims are valued at $0, thus making this a dispute about

8    the Annuity Value or Value of the Claim that is subject to arbitration.  Amended Petition, ECF No.

9    22 ¶ 19.

10        Accordingly, on December 2, 2013, Matson Terminals, Inc. filed a petition to compel INA to

11    arbitrate the dispute.  Original Petition, ECF No. 1 at 1-13.  On February 18, 2013, Matson filed an

12    Amended Petition that added Matson Navigation Co. as a petitioner and is identical to the Original

13    Petition is all material respects.  Amended Petition, ECF No. 22.  (The memorandum of points and

14    authorities filed in support of the Original Petition is still the operative briefing, though.  *See* Memo,

15    ECF No. 1 at 14-30.)  Pursuant to the parties' stipulated briefing schedule, INA filed an opposition

16    on February 27, 2014, and Matson filed a reply on March 6, 2014.  Opposition, ECF No. 26; Reply,

17    ECF No. 29.  A few days before the hearing, the parties' stipulated to allow INA to file a sur-reply,

18    which the court considered.  Stipulation, ECF No. 31; *see* Sur-Reply, ECF No. 30-2.[3]  The court held

19    a hearing on the matter on March 20, 2014.  3/20/2014 Minute Order, ECF No. 33.

## ANALYSIS

21    **I.  LEGAL STANDARD**

22        Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., arbitration agreements "shall be

23    valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the

---

26        [3] Before the parties filed their stipulation, INA filed an administrative motion for leave to file
its sur-reply.  Administrative Motion, ECF No. 30.  Whether by way of INA's administrative motion
27    or the parties' stipulation, the court will consider INA's sur-reply, as well as the points Matson
makes in response to INA's administrative motion.  *See* Response to Administrative Motion, ECF
28    No. 32.  Accordingly, the court **GRANTS** INA's administrative motion and **APPROVES** the
parties' stipulation.

revocation of a contract." 9 U.S.C. § 2. "Once the court has determined that an arbitration agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The FAA reflects "both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility, Inc. v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms. *Id.* at 1745-46 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) and *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (citations omitted)).

Nonetheless, when a question arises as to whether "a particular party is bound by the arbitration agreement," "the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (emphasis in original; citation omitted). This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "Thus, a federal court must review the contract at issue to determine whether the parties have each agreed to submit a particular dispute to arbitration." *Goodrich Cargo Sys. v. Aero Union Corp.*, No. 06-06226 CRB, 2006 WL 3708065, at *2 (N.D. Cal. Dec. 14, 2006) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) ("The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination . . . ."); *John Wiley & Sons, Inc. v. Livingston,*

UNITED STATES DISTRICT COURT
For the Northern District of California

1   376 U.S. 543, 547 (1964) ("The duty to arbitrate being of contractual origin, a compulsory

2   submission to arbitration cannot precede judicial determination that the . . . agreement does in fact

3   create such a duty.")).

## II.  THE COURT CAN DECIDE THE QUESTION OF ARBITRABILITY

5           As an initial matter, the court must decide whether it can decide Matson's motion.  Whether a

6   dispute is arbitrable is generally a question for a court, not an arbitrator, to answer in the first

7   instance.  *See*, *e.g.*, *PowerAgent v. Electronic Data Systems Corp.*, 358 F.3d 1187 (9th Cir. 2004).

8   Still, "arbitration is simply a matter of contract between the parties; it is a way to resolve those

9   disputes – but only those disputes – that the parties have agreed to submit to arbitration."  *First*

10  *Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).  "The language of an arbitration

11  agreement establishes whether the determination of arbitrability is for the court or delegated to an

12  arbitrator."  *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x, 630, 632 (9th Cir.

13  2011) (citing First Options, 514 U.S. at 943).  The court cannot "assume that the parties agreed to

14  arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so."  *Rent-A-*

15  *Center, West*, 130 S.Ct. at 2777 n.1 (internal quotation marks omitted).

16          Thus, the court begins from the presumption that arbitrability is an issue for the court to decide.

17  *See Kimble v. Rhode College, Inc.*, No. C-10-5786 EMC, 2011 WL 2175249, at *1 (N.D. Cal. June

18  2, 2011).  "If, however, the court concludes that the parties to the agreement did clearly and

19  unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court

20  should perform a second, more limited inquiry to determine whether the assertion of arbitrability is

21  "wholly groundless."  *Qualcomm, Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006)

22  (applying Ninth Circuit law); *accord*, *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir.

23  2011); *Agere Systems, Inc. v. Samsung Electronics Co. Ltd.*, 560 F.3d 337, 339 (5th Cir.2009);

24  *Madrigal v. New Cingular Wireless Services, Inc.*, 09-CV-00033-OWW-SMS, 2009 WL 2513478

25  (E.D. Cal. Aug. 17, 2009); *Clarium Capital Mgmt. LLC v. Choudhury*, No. C 08-5157 SBA, 2009

26  WL 331588, at *4-5 (N.D. Cal. Feb. 10, 2009); *Clyde Bergemann, Inc. v. Sullivan, Higgins & Brion,*

27  *PPE, LLC*, CIV.A. 08-162-KI, 2008 WL 2116908 (D. Or. May 14, 2008) *adhered to on*

28  *reconsideration sub nom. Clyde Bergemann, Inc. v. Sullivan, Higgins & Brion*, 2008 WL 4279632

UNITED STATES DISTRICT COURT
For the Northern District of California

1    (D. Or. Sept. 18, 2008).

2        Here, neither party contends that the parties agreed to arbitrate arbitrability—INA does not make

3    this argument, and Matson filed its petition specifically asking the court to make this

4    determination—and the court sees nothing in the Policy, Endorsement # 6, or the arbitration

5    agreement that suggests otherwise.  Accordingly, and in light of the presumption that arbitrability is

6    an issue for a court to decide, the court finds that the parties did not agree to arbitrate arbitrability

7    and that the court can decide this dispute.

8    **III.  THE PARTIES' DISPUTE IS NOT WITHIN THE SCOPE OF THE ARBITRATION**

9    **AGREEMENT**

10        The court begins its analysis by looking to the words of the arbitration agreement.  The language

11   defining the scope of the arbitration agreement states simply that "[i]n the event that INA and the

12   insured cannot agree upon the Annuity Value or Value of the Claim, the matter shall be submitted to

13   binding arbitration in San Francisco, California."  The terms "Annuity Value" and "Value of the

14   Claim" are defined in Endorsement #6 and describe the process by which to calculate how much

15   INA has to pay Matson for a permanent total disability of death claim.  The court agrees with INA

16   that the arbitration agreement's language is quite narrow: it specifies exactly the type of dispute that

17   is covered, and it does not, for example, require arbitration of "all disputes related to" or "arising out

18   of" a particular contract (i.e., the Policy) or relationship.  *Cf. Simula, Inc. v. Autoliv, Inc.*, 175 F.3d

19   716, 720 (9th Cir. 1999) (arbitration clause containing the language "all disputes arising in

20   connection with this Agreement" "reaches every dispute between the parties having a significant

21   relationship to the contract and all disputes having their origin or genesis in the contract"); *Republic*

22   *of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991) (arbitration clause containing

23   the phrase "any and all disputes arising under the arrangements contemplated hereunder" must be

24   interpreted liberally).[4]  Instead, it requires arbitration only of disputes about "the Annuity Value or

25   _____

26        [4] In response to INA's citation of these opinions, Matson argues that there are no "judicially
     recognized words" or specific language that are required to make an arbitration agreement broad in
27   scope.  *See* Reply, ECF No. 29 at 15-16.  This is true, but INA does not make this argument.
     Instead, INA (and the court) cite these opinions for the simple point that the arbitration agreement
28   here does not contain language that courts have found to be broad.  That the arbitration agreement is

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Value of the Claim."

2       Matson's argument that "any collateral or peripheral issue" that impacts a dispute that is covered

3   by an arbitration agreement, *see* Memo, ECF No. 1 at 25, is not persuasive.  The scope of an

4   arbitration agreement is determined by its language.  Where that language is broad and reasonably

5   can be read to include collateral or peripheral issues, then collateral or peripheral issues are subject

6   to arbitration, but where the language is narrow and reasonably cannot be read to include collateral

7   or peripheral issues, then collateral or peripheral issues are not subject to arbitration.  The opinions

8   Matson cites merely hold that where an arbitration agreement is ambiguous and it cannot be clearly

9   determined whether a particular dispute is covered by the arbitration agreement, then courts should

10  find that arbitration is appropriate.  *See Comedy Club, Inc. v. Improv West. Assocs.*, 553 F.3d 1277,

11  1286 (9th Cir. 2009) ("We conclude that the arbitration agreement is 'capable of two different

12  reasonable interpretations.' Under the federal presumption in favor of arbitration, because the

13  arbitration agreement is ambiguous, it should be interpreted as granting arbitration coverage over

14  'all disputes' arising from the Trademark Agreement.") (citations omitted); *Gravillis v. Coldwell*

15  *Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 771-72 (Cal. Ct. App. 2006) ("'The

16  burden is on the party opposing arbitration to show the agreement cannot be interpreted to apply to

17  the dispute . . . .  Whether a contract is reasonably susceptible to a party's interpretation can be

18  determined from the language of the contract itself . . . .  The policy in favor of arbitration does not

19  apply when the contract cannot be interpreted in favor of arbitration.  There is no policy in favor of

20  arbitrating a dispute the parties did not agree to arbitrate.'") (quoting *Balandran v. Labor Ready,*

21  *Inc.*, 124 Cal. App. 4th 1522, 1527-1528 (Cal. Ct. App. 2004)).[5]

22      Matson's citation to *Zenger-Miller v. Training Team, GMBH*, 757 F. Supp. 1062 (N.D. Cal.

23  1991), also is unavailing.  There, the defendant sought require the plaintiff to arbitrate its claims,

24  _____

25  narrow can be determined by looking to its language only.

26      [5] Nor do *Howsam v. Deam Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002) and *Int'l Union*
    *of Operating Eng'rs, Local 150, AFL-CIO v. Flair Builders, Inc.*, 406 U.S. 487, 490-91 (1972)—two
27  other opinions Matson cites—help.  Those opinions merely hold that when a party asserts laches as a
    defense to a claim that is covered by an arbitration clause, the laches defense, too, must be
28  arbitrated.

C 13-05571 LB
ORDER

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   among others, based on an arbitration clause in the contract between them that stated that "any

2   controversy, or claim arising out of, or related to, amounts due and owing under this

3   agreement shall be settled by arbitration . . . ." *Id.* at 1066.  Although a separate choice of law

4   provision rendered the following reading implausible, the court noted that, under the arbitration

5   clause's language only, the plaintiff's claims, which sought damages, would have "related to

6   amounts due and owing" and may have been arbitrable.  *Id.* at 1067.  Matson says that this statement

7   means that INA's "coverage defense" is arbitrable because it affects the amounts due to it.  *See*

8   Opposition, ECF No. 1 at 27.  The problem with this argument, though, is that the arbitration clause

9   in *Zenger-Miller* is broader than the one at issue here.  The arbitration clause in *Zenger-Miller*

10  specifically required arbitration of "any controversy, or claim arising out of, or related to, amounts

11  due and owing under this agreement," while the arbitration agreement here requires arbitration of

12  disputes about "the Annuity Value or Value of the Claim."  As the court has made clear in the

13  preceding paragraphs, it is the specific language of *this* arbitration agreement that matters, and that

14  language is quite narrow.[6]

15      Given the narrow scope of the arbitration agreement, the resolution of Matson's Amended

16  Petition turns on how the parties' dispute is characterized.  INA characterizes it as a dispute over

17  whether the claims are covered under the Policy.  *See* Opposition, ECF No. 26 at 5, 14-19.  Indeed,

18  INA denied Matson's claims because it believes that Matson's payments to the Special Fund are

19  administrative assessments and are not "losses" that are covered by the Policy.  *See id.* at 5 (citing

20  *Nat'l Steel & Shipbuilder Co. v. Century Indem. Co.*, No. 12-cv-1147-MMA-MDD, 2013 WL

21  3989194 (S.D. Cal. Aug. 2, 2013)); *see also* Leverett Declaration, Ex. C, ECF No. 3-3.  INA then

22  argues that a dispute over whether a claim is covered under the Policy is not within the narrow scope

23  of the arbitration agreement, which requires arbitration only when the parties "cannot agree upon the

24  Annuity Value or Value of the Claim."  Opposition, ECF No. 26 at 5-6, 14-15, 17.

25      Matson, on the other hand, characterizes it as a dispute over the "amounts of benefits payable for

26

27      [6] Matson's citation to *Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447, 1450-51 (9th
    Cir. 1986), *Bixler v. Next Fin'l Group, Inc.*, 858 F. Supp. 2d 1136, 1149 (D. Mont. 2012), and *Sacks*

28  *v. Dean Witter Reynolds, Inc.*, 627 F. Supp. 377, 378 (C.D. Cal. 1985), is unavailing for the same
    reason.  The arbitration agreements in those cases were all much broader than the one at issue here.

1   permanent total disability losses" that is covered by the arbitration agreement.  Memo, ECF No. 1 at

2   21-24.  It argues that INA's "coverage defense" is "valuation-based" and a "peripheral issue that

3   impacts a claim's value" that must be arbitrated because otherwise the "entire benefit of arbitration

4   will be lost."  *Id.* at 24-28.  Indeed, Matson repeatedly argues that INA's denial essentially is an

5   assertion that the claims have "no value at all (zero dollars) because it argues that it has no

6   indemnity obligation."  Amended Petition, ECF No. 22 ¶ 19; *see also* Memo, ECF No. 1 at 16

7   (INA's response that the claims are not covered "amounts to an assertion that the value of each of

8   the 12 claims is zero"), 24 ("Ultimately, INA's position is that it owes Matson zero dollars . . . ."),

9   25 (INA's defense is "offered in an effort to establish that the claims have no value").

10      The court views the parties' dispute as INA does.  To interpret the dispute as Matson does would

11   be render arbitrable any dispute based upon any permanent total disability or death claim denial

12   based on a purported lack of coverage because the denial of a claim necessarily means that the

13   claimant receives nothing.  INA is not agreeing that Matson has covered claims and then contending

14   that those claims are valued at $0; it is saying that Matson's claims are not covered.  Such a dispute

15   is not contemplated by the narrow arbitration agreement that the parties entered into, and the

16   negotiations surrounding the drafting of Endorsement # 6, which Matson discussed in its reply and

17   at oral argument, do not suggest otherwise.  The inclusion of Endorsement # 6's "Election of

18   Options" for payment also does not mean that INA's "no covered loss" denial is turned into a

19   dispute about "the Annuity Value or Value of the Claim."  Moreover, the court rejects Matson's

20   argument that the court must nevertheless find arbitration appropriate because its characterization of

21   the dispute is a reasonable one and therefore it is ambiguous whether the dispute falls within the

22   scope of the arbitration clause.  *See* Reply, ECF No. 29 at 16-18.  The opinions it cites do not stand

23   for this proposition; instead, they support the proposition that where an arbitration agreement is

24   ambiguous and it cannot be clearly determined whether a particular dispute is covered by the

25   arbitration agreement, then courts should find that arbitration is appropriate.  *See Mastrobuono v.*

26   *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Moses H. Cone*, 460 U.S. at 24-25;

27   *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984); *Gravillis*, 143 Cal.

28   App. 4th at 771-72.  Here, the court does not find the language of the arbitration agreement to be

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

ambiguous.  In the court's opinion, the arbitration agreement cannot reasonably be read to include the dispute before the court now.

### CONCLUSION

For the reasons stated above, the court **DENIES** Matson's Amended Petition to compel arbitration.

**IT IS SO ORDERED.**

Dated: March 21, 2014

_____
LAUREL BEELER
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28